BABB v. ELLIS *et al., Appellants.*

1. **Administration:** REMEDY AGAINST SURETIES OF DECEASED ADMINISTRATOR. The remedy provided by section 68, page 487, General Statutes 1865, against the sureties of a deceased administrator or executor who has not accounted for funds of the estate, may be invoked in any case of administration. It is not solely applicable to partnership estates.

2. **Dual Fiduciary Capacity:** ADMINISTRATOR: COMMISSIONER IN PARTITION: LIABILITY FOR FUNDS. Where the administrator of an estate was appointed commissioner in partition to sell lands of the estate, and upon making sale was ordered to pay a certain portion of the proceeds to the widow in lieu of homestead and dower, and the remainder, after satisfying certain demands, to himself as administrator, and the widow, without giving a supersedeas bond, appealed from this order, claiming a larger share of the proceeds; *Held*, that as to the part not claimed by her it was not only the right but the duty of the commissioner to transfer it to himself as administrator pending the appeal.

3. ———: ———. The evidence in the present case, *Held,* to show that funds held by deceased as commissioner in partition were transferred by him to himself as administrator.

4. **Evidence**: LIMITING ITS USES. Certain admissions made by persons with whom the defendants in this case were in privity; *Held,* to have been properly admitted in evidence; and although some of them may not have been competent as against all of the defendants, yet as the court was not asked to instruct the jury against which it could be used and against which not, there was no error.

*Appeal from Boone Circuit Court.*—HON. G. H. BURCK-
                                        HARTT, Judge.
AFFIRMED.

*Virgil M. Harris* and *Glover & Shepley* for appellants.

1. The moneys received by Pierce, as special commissioner, were never turned over to Pierce, administrator of Cochran, by any act of said commissioner. What he did with them is not fully shown. But there is positively no evidence that he ever made any inventory or report of these moneys, as being in his hands as administrator of Cochran, or ever charged himself therewith as such, in any settlement, or otherwise. If the moneys at any time passed out of his hands as special commissioner, and into his hands as administrator of Cochran, they must have passed by their own motion, and left no trace of the fact behind them. But the law holds that there must be evidence of the transfer. 1 Perry on Trusts, (2 Ed.) § 203. And the evidence must be plain and unequivocal. *Newcomb v. Williams,* 9 Metc. 525; *Prior v. Talbot,* 10 Cush. 1; *Hall v. Cushing,* 9 Pick. 395; *Hubbard v. Lloyd,* 6 Cush. 522; *Eliott v. Sparrell,* 114 Mass. 404; *Ruffin v. Harrison,* 81 N. C. 208; *Miller v. Congdon,* 14 Gray 114; *Perkins v. Moore,* 16 Ala. 9; *Burton v. Tunnell,* 4 Harr. 424.

2. It was not Pierce's duty as special commissioner, nor had he as such power to turn over any land moneys to the administrator of Cochran till after he had settled with the widow. The title to these moneys was vested in the cir-

cuit court for the purposes of the partition suit, and it was
not in the power of Pierce as special commissioner to oust
the jurisdiction of the court over them.    If the special
commissioner had turned them over to the administrator
prior to the final judgment in the circuit court, his act
would not have lifted the moneys out of the circuit court,
nor transferred them to the probate court, nor vested any
title to them in the administrator.   Such an act would
have been in contempt of the jurisdiction of the circuit
court, and Pierce could have been compelled to pay the
moneys again into the circuit court.   The order of August
28th to turn over was not final.   The change made No-
vember 26th, and Mrs. Cochran's appeal from the order as
modified re-opened the litigation.   The effect of the ap-
peal was to retain the whole land moneys within the juris-
diction of the circuit court, for the purpose of ascertaining
the amount due to Mrs. Cochran and the additional amount
of cost to be incurred in the renewed litigation.   In this
condition of the cause, one of two things is true :   Either
these moneys were held by the jurisdiction of the circuit
court, or they were not.   If they were held by the juris-
diction of the circuit court, all of them were so held, and
not a dollar could pass into the jurisdiction of the probate
court until after the jurisdiction of the circuit court was
exhausted.   If the special commissioner, Pierce, could turn
them over to the probate court, pending the continuance
of the litigation in the circuit court, then he could oust
the jurisdiction of the circuit court and make nugatory
any future order to be entered by the Supreme Court or
circuit court.   *State v. Hearst*, 12 Mo. 365 ; *Hall v. Cush-
ing*, 9 Pick. 395 ; *Conkey v. Dickinson*, 13 Met. 51 ; *Karr v.
Karr*, 6 Dana 3 ; *Jennings v. Davis*, 5 Dana 127.

3.   If it was shown that pending the litigation in the
circuit court Pierce turned over these moneys to Cochran's
administrator, no title would have vested in the adminis-
trator.   *Shields v. Smith*, 8 Bush 602; *Peck v. Mead*, 2

Wend. 470; *Cooper v. White*, 19 Ga. 554; *Trecothick v. Austin*, 4 Mason 29; *St. Louis v. Sickles*, 52 Mo. 122.

4.   The attempt of the respondent to show that the Cochran land moneys were turned over by special commissioner Pierce to Cochran's administrator, is repelled by the continued exercise of jurisdiction by the circuit court.

5.   This suit cannot be maintained.   It is founded on section 67, page 487, General Statutes 1865; but that section is only applicable to partnership estates.   Plaintiffs should have prosecuted under section 47, page 484, General Statutes.

*Macfarlane & Trimble* for respondent.

Pierce was commissioner, appointed such in the partition suit and as such was under the control of the court and subject to its orders.   He was also, as administrator, a party to the suit, and, of course, subject to its orders. As commissioner, he had failed to qualify by giving bond. As administrator, he was fully qualified, and was under bond.   The estate was indebted to such an extent as to require a sale of the land.   The administrator then was entitled to the proceeds of the sale of the land. ˙ The court ordered Pierce, as commissioner, to pay the proceeds to Pierce, as administrator.   Without other act on the part of Pierce, the law presumes that he transferred the funds as ordered.   Herman on Executions, § 270.   In fact no affirmative act was necessary in order to accomplish the transfer.   A person acting in a dual capacity will be presumed to hold the funds in his hands in whatever capacity he should in law hold them, he being properly qualified. *State v. Purdy*, 67 Mo. 94; *Golder v. Littlejohn*, 30 Wis. 352. In the case at bar, Pierce, as commissioner, had given no bond and never did.   He then had no right to the custody of the funds.   It was competent for the court and its duty, either to require a bond or take the funds out of his hands. It did the latter by requiring him to hold them as admin-

istrator.   But there is no necessity of invoking a presump-
tion in this case.   There is no doubt but that a transfer
may be shown by the acts of the administrator in reference
thereto.   1 Perry on Trusts, § 263.   Such acts are abun-
dantly shown in this case.

It is insisted that the widow, having appealed from
the judgment of the court in reference to her dower, that
fact would operate as a stay on the commissioner and not
permit his compliance with the order of court; we say it
would not even operate as an excuse to the commissioner·
The administrator could hold the funds and distribute them
under the order of the court as well as the commissioner;
he is as much under the control of the court as the com-
missioner.   The administrator came into court for the sole
purpose of getting possession of the funds arising from
the sale of the land; the order was made at his request
transferring them to him, and an appeal by the widow can-
not relieve him from his obligation, nor could it relieve
the administrator from his duty to obey the order; besides,
he was not qualified to hold it as commissioner.   The in-
terest of the widow was small compared with that of the
estate, and it could not be reasonably expected that the
whole funds should lie in abeyance, awaiting the result of
a decision which would affect only a small part.

*S. Turner, Jr.,* and *S. C. Douglass* also for respondent.

1.   This proceeding was properly had under section
68, page 81, Wagner's Statutes.

2.   It devolved on Pierce, as administrator, knowing,
as he did, that there was a deficit of personalty, to see that
the real estate belonging to the estate of Wm. Cochran was
subjected to the payment of the unpaid allowances against
his estate; and especially was it incumbent on him so to
do, since he procured himself to be made a party to the
partition suit for that avowed purpose.   *Gamble v. Gibson,*
59 Mo. 594; *State v. Scholl,* 47 Mo. 84; Perry on Trusts,

(2 Ed.) § 263; Williams on Executors, s. p. 1547, 1536;. 3 Redfield on Wills, (2 Ed.) § 119, p. 558; *Dix v. Morris*, 66 Mo. 518.

3. Administrator Pierce having been made a party to, and appointed special commissioner in, the partition suit, and thus acting in a double fiduciary capacity, it devolved upon him and he was bound to collect the moneys coming to the estate of his intestate. If he failed so to do, he was in a worse position than if another had been the commissioner, for having the money in his hands as commissioner, it was imperatively his duty to see that the estate got the benefit of it. The lying by and permitting the estate to be wasted, if in the hands of another, without preserving the interest of creditors, would of itself have made him liable on his bond. With much greater force is he liable, when he has the money in his hands and then fails to credit his estate therewith. He virtually had the money, as administrator, in his hands under the circuit court's order as it was paid. *The Final Settlement of Wood*, 71 Mo. 626 ; *Hellman v. Wellenkamp*, 71 Mo. 409.

4. The effect of the order of 28th August, in the partition suit was to transfer the proceeds of the land sale,. *eo instanti* to Pierce as administrator. The filing of the motion by Mrs. Cochran to set aside the same *pro tanto*, and to grant her a new trial in so far as the order affected her rights of homestead and dower, did not defeat or suspend the operation of said order. Neither did the appeal operate to change the status of the fund from that of assets belonging to the administrator and relegate it to Pierce as commissioner. Freeman on Judg., (2 Ed.) § 328.

HENRY, J.—This was a proceeding in the probate court of Boone county by the administrator of Cochran, against the administrator of Pierce and his securities on his bond as administrator of said estate of Cochran, under section 68, page 487, General Statutes of 1865, to recover a large sum of money which his successor, as administrator of

Cochran's estate, alleged that Pierce, (his predecessor in said administration,) had wasted. A judgment was rendered against defendants, from which they appealed to the circuit court, where plaintiff was again successful, and they have appealed to this court.

The first question to be disposed of relates to the jurisdiction of the probate court. Section 67 and 68 of the

1. ADMINISTRATION: remedy against sureties of deceased administrator.

Revision of 1865, are found immediately succeeding sections which relate exclusively to partnership estates. Sections 52 to 66, inclusive, by their express terms apply to partnership estates only, and whether the remaining sections of that article, 67 to 74, inclusive, apply to other than partnership estates, is the question for solution.

There is nothing whatever in the phraseology of either of those sections which restricts its application to partnership estates. The trouble arises from the act of the revisors in placing all of those sections under a general heading, "Of Partnership Estates," a subdivision made by them and not the legislature. It is manifest that section 74, the last of those sections, does not relate exclusively to partnership estates. It provides that : "This act shall not be so construed as to prohibit any justice or clerk of any county court not having probate jurisdiction, from becoming an executor or administrator, or from being security in any bond required by this chapter."

In *Brown v. Weatherby*, 71 Mo. 153, the proceeding was by an administrator against his predecessor and his securities under section 67. It was an individual and not a partnership estate, and the jurisdiction of the probate court was not questioned, and seems to have been taken for granted by the court. We are all of opinion that section 68 authorized this proceeding in the probate court.

Pending the administration of the estate of Cochran, a suit was instituted in the circuit court of Boone county

2. DUAL FIDUCIARY CAPACITY: administrator: commissioner in partition: liability for funds. for partition of the real estate of the intestate, and assignment of his widow's dower. Pierce, the administrator, applied to be made a party to that suit, alleging that there was not personal property of the estate sufficient to pay its debts. He was made a party, and on May 7th, 1875, a judgment of partition was rendered, that the land be sold, and Pierce was appointed commissioner to make the sale. He sold the land to John Hinton for $7,900 in August, 1875, receiving $2,633.33 in cash, and Hinton's notes for the balance, payable to Pierce as commissioner. He made report of the sale to the circuit court in August, 1875, and on the 28th day of August, 1875, at a subsequent term, that court, on his motion, made an order that he, as commissioner, pay to Cochran's widow $1,500, to O. Guitar $300, and to the officers of the court the costs which had accrued, and the balance to Cochran's administrator, to pay debts of said estate. From this order the widow appealed to this court, which, at its October term, 1878, reversed the judgment and remanded the cause, holding that the widow was entitled to a greater sum than was allowed her by the judgment of the circuit court.

That Pierce, as administrator of Cochran's estate, had converted to his own use assets of the estate to a large amount, prior to his receipt of the purchase money for the land, is beyond controversy. The only question is, whether his sureties on his bond as administrator, are liable to the estate for the amount received by him for the land. Defendants contend that as administrator that money never came into his hands; that he received it as commissioner, and never transferred it to himself as administrator, nor could he have done so while the case was pending in this court on Mrs. Cochran's appeal.

There was nothing in the appeal of Mrs. Cochran to prevent Pierce from transferring to himself, as administrator, the largest portion of that purchase money. What Mrs. Cochran claimed was a larger amount than was al-

lowed her for dower and homestead right, which was susceptible of a tolerable accurate computation, and a deduction of the taxes, a definite sum with which she was charged. There was no supersedeas to stay the execution of the order or judgment of the circuit court, and he certainly would not have been in contempt of court by paying to himself, as administrator, the surplus. He would but have complied with that order, and there was no order, either of the circuit court or Supreme Court, forbidding his compliance with it. It would not have been a withdrawal of the funds from the jurisdiction of the circuit court by the commissioner, of his own volition; but the execution of an order of that court, made in the exercise of its conceded jurisdiction by one who was directed to execute it.

The only remaining question is: Did Pierce transfer the money received by him as commissioner, to himself as administrator? Some trouble and confusion arise from the dual capacity in which he acted.

If another had been commissioner instead of himself, and had paid the money to Pierce, under the order of the circuit court which was made, there could be no question, we think, that his sureties would be liable. They would not be heard to say, that Pierce was not authorized to receive it as administrator, because the commissioner was not authorized to pay it to him. He would in such case, as administrator, have received money belonging to the estate, as then ascertained by the judgment of the circuit court, and subsequently by this court, and their liability would scarcely admit of a doubt. The simple fact of the receipt of the money as administrator, to all of which, within a few hundred dollars, the estate was entitled, no matter how the Supreme Court might decide the questions involved in the widow's appeal, would have fixed their liability, whether the administrator charged himself with it or not, in a settlement or otherwise, or even executed a receipt for it to the commissioner.

Whether, in compliance with the order of the circuit court, Pierce turned that money over to himself as administrator, is to be determined by the evidence. That he did we think it clearly established. He used a large amount of it in a payment made by him to Thos. E. Turney, guardian and curator, under an order of distribution made by the probate court of Boone county, September 29th, 1875. As a further proof that he complied with the order of the circuit court to transfer the purchase money for the land to the estate of Cochran, he paid costs and expenses of the partition suit, and the money which by that order he was required to pay to the widow. Did he intend to obey the order in some of its requirements and disregard the others? No specific formal act of transfer is shown, but he held it as commissioner, was ordered to transfer it to himself as administrator, after payment of certain sums mentioned in the order. Those other sums he did pay—a portion of this money he used in paying demands against the estate. He kept all his money on deposit in the banks at Columbia, to his individual credit. He had no accounts with the banks as administrator or commissioner, and his accounts in those banks show that the money collected of Hinton was deposited in the banks to his individual credit and drawn out on his individual checks. We cannot find evidence expressly showing that all of the money received by Pierce as commissioner was used in payment of debts against the estate of Cochran, but, when it is shown that a large amount of that money was so used by him, in connection with the other facts already alluded to, and that the money so used could only have been used by him in that way, lawfully, on the hypothesis that he had transferred the money received by him as commissioner, in compliance with the order of the circuit court, the inference is by no means forced or unfair to him, or his securities, that he had transferred all of that money to himself as administrator.

The record in this cause is so voluminous that we can-

not attempt to state more than our deductions from the testimony.

Objection is made to the testimony of Judge Hinton, detailing a conversation with Pierce and Jno. W. Harris, severally, in which they seemed to have admitted, in effect, that Pierce held the proceeds of the land sale as administrator of Cochran's estate. Certainly, if Pierce had charged himself as administrator with this money, in any settlement in the probate court, or in any private memorandum book, kept by him of his acts and doings as administrator, or had placed it to his credit, as such administrator, in the bank, the evidence that he had done so would have been admissible against his securities. It was only by some act of his, under the circumstances, that the money could have been transferred from the commissioner to the administrator. His statement that he had done so was admissible for the same purpose, not as conclusive but as competent evidence of the fact. If he had formally declared to Judge Hinton, probate judge: "I henceforth hold that money as administrator of Cochran's estate," would it not be admissible to prove that declaration, to show that he had, in obedience to the order of the circuit court, made the transfer? So, of the admission of Jno. W. Harris. He was a party to the bond and to the proceeding on the bond, and his admission that Pierce held that money as administrator of Cochran's estate, was admissible against him, and the court was not asked to declare that it was admissible against him only, but the objection was general to its relevancy.

But aside from this, there was abundant other evidence to prove the fact admitted by Pierce and Harris to Hinton. All concur in affirming the judgment.