IN THE MATTER OF THE FINAL SETTLEMENT OF WOOD.

1. **Guardian and Ward**: AFFIRMANCE OF GUARDIAN'S ACTS BY ACQUIESCENCE OF WARD AFTER MAJORITY. A minor having entered into an arrangement with the other members of his family for the purchase of the homestead of their deceased father, which was about to be sold under a decree in partition, for the purpose of carrying out the arrangement and at the request of the minor, his curator bought and paid a fair price for a part of the land, and took a conveyance to the minor, who went into possession, cultivated, improved, cut timber from the land, leased a part of it, offered it for sale, claimed it as his own, and exercised continuous acts of ownership over it for a period of five years and up to the time of his curator's final settlement, two years after his majority. The curator was no party to the family arrangement, neither advised nor suggested it, and derived no advantage whatever from the purchase. *Held,* that upon the final settlement the curator was entitled to credit for the amount so paid out. It was too late for the ward to repudiate the transaction.

2. **Double Fiduciary Capacity**: FINAL SETTLEMENT, WHEN NOT CON-

CLUSIVE. The curator of the estate of a minor had also been administrator of the minor's deceased father, and as such had made final settlement. He subsequently presented his accounts as curator for final settlement. Upon objections made by the ward; *Held*, that if he had failed to account in his capacity as administrator for any money received from the father's estate to which the ward was entitled as distributee, he might be charged with it as curator. To that extent, the final settlement as administrator was not conclusive as between them.

*Appeal from Henry Circuit Court.*—Hon. F. P. Wright, Judge.

Reversed.

*Owens & Wood* for the ward, appellant.

*Edmund Burke* and *Draffen & Williams* for the curator.

Henry, J.—At the June term, 1875, of the Moniteau probate court, John Wood filed an account for a final settlement of the estate of his ward, John E. Wood, and among others asked credit for the following items :

To amount paid Buckhart, sheriff, for land for ward, $3,186. Interest on same from September 8th, 1871, to January 8th, 1875, at ten per cent, $1,372.39.

The ward filed objections to the allowance of these items, but the court allowed them, and on the settlement there was a balance against the ward of $307.29, for which the curator had a judgment. The ward appealed to the circuit court of Moniteau county, and the cause was transferred to the circuit court of Henry county on an application for a change of venue, and in that court a balance of $135.43, was found due the ward, for which a judgment was rendered, and he has appealed from that judgment. Other items of the account were contested, but the only points urged and relied upon for a reversal by the appellant are, the allowance by the court of $3,186 and interest thereon, $1,372.39, paid by the curator for a tract of land purchased by him for the ward, and the refusal of the

court to permit him to prove that the curator had received $1,078.33 as administrator of the estate of the ward's father, and properly chargeable against him on his final settlement of that estate. This evidence the court excluded on the ground that the final settlement of the administrator was conclusive against the ward, in this proceeding.

The purchase of the land was made by the curator for the ward, at his request. It was a part of the home-
1. GUARDIAN AND WARD: affirmance of guardian's acts by acquiescence of ward after majority. stead of the ward's father, and it was in pursuance of a family arrangement that the land was purchased by Jno. E. Wood. It was not advised, or suggested by the curator, nor was he a party to the arrangement. The sheriff, who sold the land under a decree in partition, was not willing to take the ward's note for the purchase money, but required the curator to make the note. The curator purchased it for his ward at a fair price, executed his note for the purchase money, had a deed executed to the ward, and the latter took possession of the land and remained in possession, improving, cultivating, cutting wood and ties from it, and leasing part of it, from the date of the purchase in 1870 until 1875, including two years after he attained his majority, December 31st, 1873. In the winter of 1874, or spring of 1875, he built a house upon the land, was cultivating it in 1875, offered to sell it in 1874 to Jacob Jobe, and in 1875 to S. A. Chase, leased a part of the land in 1874 to P. A. Jobe, and from September, 1870, to 1875, was in the continuous possession of the land, exercising acts of ownership and claiming it as his own. He did not purchase the land of the curator, nor is there a particle of evidence tending to show that the latter made a cent of money by the transaction, or in any manner acted in bad faith toward the ward; but, for his accommodation and the accommodation of the family, purchased the land for him, gave his note for the purchase money and paid it; and, on this state of facts, to permit him to repudiate the purchase, and make the curator take the land, would be ··

40—71

inequitable and without the sanction of any authority cited by his counsel.

This is wholly unlike the cases cited and relied upon by him. In those cases the ward had sold, given to or purchased property from the curator or guardian. The latter had derived some advantage from the transaction, and the ward promptly, on arriving at age, had repudiated it. Here was no purchase from or sale or gift to the curator; but, for the accommodation and at the request of the ward, he purchased the property for him; and, for two years after his majority, the ward kept possession of the property, claiming it as his own, and expressed, nor indicated, any dissatisfaction with the purchase until after controversies arose betwixt him and his curator in regard to other matters. It was then too late to repudiate and avoid his purchase, and the court did not err in so holding.

We think, however, that the court did err in excluding the evidence offered to show that the curator, John Wood, 2. DOUBLE FIDU- was also the administrator of his ward's CIARY CAPACITY: final settlement, father's estate, and received money belonging when not conclu- sive. to that estate with which he never charged himself, either in the settlement of that estate or as curator of John E. Wood. As to strangers to that estate, the final settlement is conclusive, but as curator of John E. Wood, John was bound to collect of his father's estate the ward's share of the money in question. The evidence was offered to show not only that it could have been, but that it was, collected; that he actually had in his hands, as administrator, an amount of money to which his ward, as one of the distributees, was entitled. If a stranger had been administrator of that estate, and this curator had known that he had money in his hands to which his ward was entitled, and permitted a final settlement of that estate to be made, without making a proper effort to collect it for his ward, would it have been any answer to a suit against him as curator for such neglect of duty that there had been a final settlement of such estate? The lying by and permitting

such final settlement to be made, without collecting the money due his ward, is the very ground of complaint. The curator having also been such administrator, so far from being in a better, is in a worse position, than if another had been the administrator of that estate; for, in the latter case, he would only have had an action to recover the money for the ward, whereas in the former, the money was in his possession, and he had but to credit his ward with the amount to which he was entitled. He has virtually received so much money due his ward, and failed to account for it, if the facts alleged be true. Judgment reversed and cause remanded. All concur.