TITTMAN, *Public Administrator, v.* GREEN, *Appellant.*

DIVISION TWO.

1. **Trustee:** ACTION ON BOND: SURETY: EVIDENCE. The order appointing the trustee is properly admitted in evidence in an action against a surety on the former's bond.

2. ——: ——: ——: ——. A receipt from the trustee as such to himself as curator of the *cestui que trust*, executed after the assumption of the trust and the giving of the trustee's bond, and presented to the probate court on a settlement of his accounts as guardian and curator, was competent against the surety as evidence that thereafter the curator held the estate of his ward in his capacity as trustee.

3.  **Curator**: SEPARATE ACCOUNTS. The mere fact of the failure of a curator to keep separate the trust and his personal funds is not conclusive of a *devastavit*.

4.  —— : SOLVENCY: EVIDENCE. The solvency of the curator is a material fact on the question of such *devastavit*.

5.  **Two Fiduciary Relations**: ELECTION: ACCOUNTING FOR FUNDS. Where the same person succeeds himself in a new fiduciary relation, if he is clearly entitled to the trust fund in the new relation, he is entitled to make an election to so hold it, and if he does so by. some affirmative, unequivocal act, from that time he will be required to account in his new trust relation.

*Appeal from St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*Lee & Ellis* and *Jos. S. Laurie.* for appellant.

(1) Branch, at the expiration of his term of office as curator, was in default, and his official bond in that capacity was answerable accordingly. When he assumed the duties of the succeeding office of trustee and gave a new bond prospective in terms, the sureties thereon did not become liable for any defaults of the prior term of office. *Farrar v. United States,* 5 Pet. 373; *United States v. Boyd,* 15 Pet. 187; *United States v. Eckford,* 4 How. 250; *Vivian v. Otis,* 24 Wis. 518; *School District v. McDonald,* 39 Iowa, 564; *Bissell v. Sexton,* 66 N. Y. 58; *Rochester v. Randall,* 105 Mass. 295; *Black v. Oblander,* 135 Penn. St. 526; *State v. Finn,* 98 Mo. 532. For the purposes of this suit we have the right to say that the sole condition of said bond is that said Branch shall account for and pay over, when lawfully required so to do, all sums of money coming into his hands as such trustee. *State ex. rel. Koch v. Roeper,* 9 Mo. App. 21; s. c., 82 Mo. 57. (2) The doctrine known as "transmutation by operation of law" is not applicable to this case. *First,* there was no final settlement in the probate court of the curatorship. "An executor, who is also trustee under a will, cannot be considered as holding any part of the

assets in the latter capacity until he has settled an account in the probate court as executor, on which he is credited as executor with the amount which he holds as trustee." *Hall v. Cushing,* 9 Pick. 395, 409; *Conkey v. Dickinson,* 13 Metc. 51; *Crocker v. Dillon,* 133 Mass. 9; Perry on Trusts, sec. 263; 2 Williams on Executors, p. 1506, note *m.* "Until he has settled his account as executor in the probate court his sureties on his guardianship bond are not liable thereon for his neglect to pay such portion." *Fish's Appeal,* 4 Cent. Rep. (Penn.) 727. *Second,* the trust funds belonging to the estate were not in the possession of the curator when he qualified as trustee; consequently, there was no subject-matter for the rule to act upon. *Ruffin v. Harrison,* 81 N. C. 208; *Taylor v. Deblois,* 4 Mason, 131; *Crocker v. Dillon,* 133 Mass. 91; *Seegar v. State,* 6 H. & J. 162; *Wilson v. Wilson,* 17 Ohio St. 150; *Baker v. Wood,* 42 Ala. 644; *Weaver v. Thornton,* 63 Ga. 655; *State v. Hearst,* 12 Mo. 366; *Walker v. Walker,* 25 Mo. 367. (3) The court erred in admitting as evidence the order of the circuit court appointing Branch trustee, and the instrument purporting to be a receipt from Branch, as curator, to himself as trustee. *State ex rel. v. Roeper,* 9 Mo. App. 21; s. c., 82 Mo. ; *United States v. Boyd,* 50 How. 29; *United States v. Eckford,* 1 How. 250; Greenl. on Ev., sec. 187; 10 Am. State Rep. 847.

*Rassieur & Schnurmacher* for respondent.

(1) Where a person having acted in one trust capacity succeeds himself in another trust capacity, so that he unites in himself the relation of creditor and debtor, inasmuch as he cannot maintain an action against himself and recover judgment and satisfaction, the law will assume and consider that he has actually received in his new office the amount owing by him in his old. *State to use v. Hearst,* 12 Mo. 365; *Walker's*

*Adm'r v. Walker*, 25 Mo. 365; *Taylor v. Deblois*, 4 Mason, 131; *Gilmer v. Baker*, 24 W. Va. 72; *State to use Gable v. Cheston*, 51 Md. 352; *Watkins v. State*, 2 Gill & Johns. 220; *Seegar v. State*, 6 Harris & Johns. 162; *Gottesberger v. Taylor*, 19 N. Y. 150; *United States v. May*, 4 Mackey, 4. (2) And the foregoing rule will be applied although no formal discharge has been obtained from the first trust office; it is sufficient that the fiduciary debtor is entitled to the trust fund in his new capacity, and has indicated by some affirmative act that he has entered upon the new office. *State to use, etc., v. Cheston*, 51 Md. 352; *Watkins v. State*, 2 Gill & Johns. 220. (3) A *devastavit* on the part of the trustee, while acting in the first capacity, will not prevent the application and operation of the rule; it is enough that he be solvent or able to pay when the second capacity is accepted by or fastens itself upon him. *Gilmer v. Baker*, 24 W. Va. 72, 92; *State v. Cheston*, 51 Md. 352. (4) The distinction between the cases cited by appellant and the foregoing cases is this: Where one succeeds himself in the same office for several successive terms, and gives new bonds for each term, or where an incumbent in office gives several bonds during the same term, and in either case is guilty of defalcation, he does not thereby become his own creditor. In case he has violated his trust by conversion of the assets, or otherwise, during any particular term, or at any particular time, the right to sue does not vest in him; the party aggrieved may bring action and recover from the sureties upon the bond in force when the breach occurred. But where the principal has succeeded himself in another capacity, so that he has become his own creditor, the rule contended for applies. (5) The court did not err in receiving the order of Branch's appointment and Branch's receipt in evidence. *First.* The bond refers to the appointment and was given in the same judicial proceedings which led to the appointment; the sureties were chargeable with notice thereof.

Bigelow on Estop. 373. *Second*. The receipt was competent: ( *a* ) As an admission of Branch not conclusive, but *prima facie*. ( *b* ) As an "act" of Branch tending to show that he had assumed the new office. Brandt on Suretyship, sec. 518, *et seq. ; State v. Dailey*, 52 Mo. 601 ; *State to use, etc., v. Roeper*, 82 Mo. 57. *Third*. But even if the evidence was incompetent, it would not furnish ground for reversal ; the same facts were developed by appellant through the testimony of his witness Branch, and the case was tried before the court without a jury. *Father Mathew Society v. Fitzwilliams*, 84 Mo. 406 ; s. c., 12 Mo. App. 445.

GANTT, P. J.—This is an action on a bond executed by Joseph W. Branch as principal, and the appellants, James Green and Robert B. Brown, as sureties. The plaintiff sues on this bond as the legal representative of Mrs. Florence E. Garrison, deceased. A trial was had in the circuit court of the city of St. Louis, and on June 22, 1889, judgment was rendered against James Green, the appellant, surety on said bond, for' $21,200.36. A motion for new trial was overruled, and appeal taken to this court.

The petition alleges that Florence Eliza 'Garrison, *nee* Crookes, died on December 14, 1885, and that plaintiff, as public administrator, took charge of her estate, in pursuance of an order of the probate court of the city of St. Louis, made July 9, 1888 ; that on November 13, 1883, Joseph W. Branch was duly appointed trustee of the estate of said Florence, by the circuit court of the city of St. Louis, and that said Branch, as such trustee, on the same day, in obedience to the order of said court, executed a bond to said Florence, in the sum of $42,000, with James Green and Robert D. Brown as sureties, conditioned that said Branch "should well and truly perform his duties as such trustee, and should account for and pay over, when lawfully required so to do, all sums of money coming into his hands as such trustee ;" and for breach of said bond assigns that said

Branch, as such trustee, on December 28, 1883, received into his hands, custody, care and charge the sum of $20,767.11 of the trust fund of which said Florence ( now deceased ) was and is the beneficiary, and that upon her death as aforesaid, and when plaintiff took charge of the estate of said Florence, said Branch was lawfully required to account for said sum, and pay the same together with interest, to plaintiff; but that he failed and refused so to do.    Judgment is prayed in accordance with the premises.

The answer of defendant, James Green, who is one of the sureties on said bond, and the appellant herein, is a general denial, and further avers that prior to the commencement of said suit said Branch, as such trustee, had accounted for and paid over to said Florence E. Garrison and her estate all sums of money due from him by reason of his relation to her as trustee.    A general reply was filed to said answer.    Branch, as principal, and Robert B. Brown, as cosurety, with appellant, were also named as defendants in the petition, but the cause was dismissed by plaintiff as to said parties, preceding the trial.

Upon the trial, the plaintiff, in order to sustain the issues on his part, proved his title to the office of public administrator of St. Louis and qualification as such; the death of Florence E. Garrison; the order of the probate court directing him to take charge of the estate of Mrs. Florence E. Garrison, deceased, upon the application of one of her heirs.    He also proved that Mrs. Garrison was Florence E. Crookes, the daughter of Joseph W. Crookes, deceased.

He then read in evidence the following order of the circuit court of the city of St. Louis:

"Tuesday, November 13, 1883.

"In the matter of Florence Eliza Crookes.

"Now at this day comes Florence Eliza Crookes in her own proper person, and submits to the court the petition filed herein, and moves that Joseph W. Branch

be appointed as her trustee ; the court having examined said petition as to said application, and she now in open court admitting that said application is made by her of her own free will, and that the facts set forth in said petition are true, being fully advised, finds, *first*, that on November 1, 1874, Joseph W. Crookes, the father of her, the said Florence Eliza Crookes, died leaving a will, which was thereafter admitted to probate in the probate court of the county, now city, of St. Louis, wherein he devised to her certain property, appointed a curator for her during her minority, provided that upon her attaining her majority that her said curator should turn said estate over to her trustee, to be held by him for her sole and separate use and benefit, to be used and enjoyed by her free from any management or control of any husband which she might at any time have ; *second*, but that her said father did not appoint or make any provision for the appointment of a trustee for her ; *third*, that she, the said Florence Eliza Crookes, has attained her majority ; *fourth*, that her curator holds estate amounting to $20,767.11, subject to the order of her trustee, when appointed ; and the court being of opinion that in the exercise of its chancery powers it may make the appointment prayed, and that the same should be made, it is, therefore, ordered by the court, that Joseph W. Branch, of the city of St. Louis, be, and he is hereby, appointed trustee, with all the powers and authority in and by said will vested in the trustee of her, the said Florence Eliza Crookes, and said Joseph W. Branch here, in open court, accepts said trust and files his bond in the sum of $42,000, with Robert B. Brown and James Green as sureties, conditioned for the faithful discharge of said trust, which bond the court now approves.''

Plaintiff then introduced said bond, which is as follows :

''Know all men, that Joseph W. Branch, as principal, and Robert B. Brown and James Green, as

secur.ti 1s, are held and firmly bound unto Florence Eliza Crookes, in the penal sum of $42,000, lawful money of the United States, to the payment whereof they bind themselves, their heirs, executors and administrators firmly by these presents. Sealed with their seals at the city of St. Louis, state of Missouri, this thirteenth day of November, A. D. 1883. The conditions of the above obligation are such, that, whereas the said Joseph W. Branch has on this day been appointed trustee of said Florence Eliza Crookes. Now, therefore, if said Joseph W. Branch shall well and truly perform his duties as such trustee, and shall account for and pay over, when lawfully required so to do, all sums of money coming into his hands as such trustee, then the bond to be void, otherwise to remain in full force and virtue.

"( Signed )          JOSEPH W. BRANCH,    [ Seal.]
                    "ROBERT B. BROWN,    [ Seal.]
                    "JAMES GREEN,        [ Seal.]"

Plaintiff next offered in evidence a paper shown to have been signed by Joseph W. Branch, which reads as follows:

"$20,767.11          ST. LOUIS, December 28, 1883.

"Received of Joseph W. Branch, curator of Florence Eliza Crookes, $20,767.11 as her estate in full.

"[ Signed ]               JOSEPH W. BRANCH,
"Trustee of Florence Eliza Crookes–Garrison."

Defendant objected to the admission of said paper, because it was not an official act, but an *ex parte* and voluntary statement of the trustee subsequent to the execution of the bond, and, therefore, not competent as against the sureties. Said objection was overruled, and defendant excepted.

Plaintiff also offered in evidence the will of the late Joseph W. Crookes, and the settlement made by Branch, as curator of Florence, in the probate court, on July 1, 1881, but upon objection of defendant said instruments were excluded. A formal demand by the

plaintiff on Branch, as trustee for the balance alleged to be due, and his failure to respond, were also shown. Plaintiff then rested, and defendant offered an instruction, in the nature of a demurrer to the evidence, which was refused by the court, and defendant excepted.

Defendant thereupon called to the witness stand Joseph W. Branch himself, who testified to the effect that Florence Crookes (who afterwards married Garrison) was his niece; that he qualified as her curator after the death of her father, which occurred in November, 1874, and that, at various dates during the interval between 1875 and 1880, he, as her curator, received from the executor of her father's estate sums of money aggregating about $20,000, which sums, when received, he entered to the credit of his individual account, and that he invested and used the entire amount on his own account, and in his own private business enterprises, except the sum of $4,000, which, in 1879, he invested in a loan for five years to Mr. Alexander, secured by deed of trust, and which was repaid to him by Alexander in May, 1884. In regard to this Alexander investment, however, he is very indefinite. He had loaned him $24,000 altogether, and the note and mortgage were in his individual name. He says, "he calculated $20,000 of it, Alice, and $4,000 for Eliza." No further explanation is given why he intended Alice should have the larger, and Eliza the smaller, amount.

He testified that on the twenty-eighth day of December, 1883, the date of the receipt, he went through no formality of transferring from himself, as curator, to himself, as trustee, the money he held for his ward and beneficiary further than executing the receipt in evidence, and exhibiting the same to the probate court. He kept no separate bank account as trustee of this fund. When he collected it, it went into his private bank account, and was used by him. He says in explanation of the receipt, that he gave it as a settlement with the probate court of his curatorship. He

charged himself with interest on the trust fund in his annual settlements, and when questioned by Major Lee on this point says he was receiving interest from various sources, and that it might have been actual interest with which he was charged. It appeared that on December 28, 1883, his balance in one bank was $465.08. When pressed by counsel to know if he had other means on that day, he says: "Sometimes I had large sums of money outside of my bank account." Could not from memory say he had or had not other moneys that day.

Counsel also went through a long account of the witness to show payments to his ward after the exhibit for final settlement was filed, but Mr. Branch very frankly says that he charged his ward with all those payments and he was not entitled to further credit for them. Although the court excluded the final settlement on the objection of counsel for the defendant, they examined Branch on all the debits and credits, and for all practical purposes it was before the trial court, and showed a balance of $20,767 due the ward.

On cross-examination, it was clearly shown that Joseph W. Branch was on December, 1883, worth between $160,000 and $170,000, over and above all his liabilities. His credit was first class. He was the owner of a large business house under the firm-name of Branch, Crookes & Co. He discounted all his bills for merchandise and material. His partners simply had an interest in the profits of the business. He testified he was amply able, at the time he qualified as trustee, to turn over the amount due his ward. He succeeded himself in the trust, but if anyone else had been appointed he could have turned over the amount.

I. There was no error in admitting the order appointing the trustee. It was a substantive fact essential to the plaintiff's case. It was necessary to inform the court of the relation Branch bore to Miss Crookes, and defendant having bound himself by the terms of the bond for the faithful performance of

Branch's duty as trustee, it followed that the court could inquire into the appointment to know its extent and limitations, and defendant was not only chargeable with notice of that order and its contents, but was estopped from denying it.    Bigelow on Estoppel [ 5 Ed.] p. 375.

II.    Nor was there any error in admitting the receipt in evidence.    It was an admission made after the trust was assumed, and at a time when defendant was standing sponsor for Branch's conduct.    It related directly to the business in hand.    While the principal is acting, his declarations may be so interwoven with his acts, as to stand in direct connection with them and form part of the *res gestæ*.    Brandt on Suretyship, sec. 518.

It is true, the court on the defendant's objection, and we think erroneously, excluded the settlement when it was offered by the plaintiff, but the defendant sufficiently proved by Branch that he had made a final settlement in the probate court, and that the balance against him was the amount of this receipt, and that he gave this receipt as a settlement with that court. While open to explanation as other receipts, it was competent evidence as an admission of the principal against himself.    *State to use v. Roeper*, 82 Mo. 57 ; *State to use v. Dailey*, 52 Mo. 601 ; *Father Mathew Society v. Fitzwilliams*, 84 Mo. 406.    Nor can we look upon this receipt as a mere form.    When his ward reached her majority, the guardianship was required by the law to be settled.    While the defendant has prevented that settlement from going into this record, he has shown by his own witness that he actually made a settlement.    The other evidence shows he has assumed a new fiduciary relation to his ward.    He was now her trustee, and he alone could give acquittances for her. This receipt presented to the probate court was an unmistakable and unequivocal act, by which he intended that court to understand he henceforth held

the estate of his ward by virtue of his appointment as trustee. It was a voucher required of all fiduciaries.

III. The important question in this case, and one discussed with great ability on both sides, is whether, upon the whole evidence, the defendant is liable as surety on the trustee bond. That the condition of the bond sued on is prospective, and that defendant cannot be held for past defaults, is conceded by respondent, and is too clear to admit of discussion or require any citation of authority. The surety is not to be held beyond the terms of his contract. He is bound by his agreement and nothing else. *Bauer v. Cabanne*, 105 Mo. 110. And, where an officer succeeds himself, his sureties are only bound for the breaches of duty occurring during the term for which they bound themselves. *State to use v. McCormack*, 50 Mo. 568; *State ex rel. v. Alsup*, 91 Mo. 172; *State ex rel. v. Finn*, 98 Mo. 532. But it is conceived that these principles of law, however well settled, do not of themselves solve the difficulties of this case.

By the last will of Joseph W. Crookes, Joseph W. Branch was made a testamentary guardian and curator of Florence E. Crookes, a minor daughter of the testator, during minority. By the will the testator further provided that, upon Florence E. attaining her majority, said curator should turn over her estate so derived to her trustee, to be held by him for her sole and separate use and benefit, free from the control of any husband she might at any time have. In the argument of counsel, it was assumed that Branch gave bond as curator, and, in the absence of a provision, in the will exempting him, of course he was required so to do.

The testator did not name her trustee, but, upon coming to the age of eighteen, acting upon the well-defined maxim, that a court of equity will not suffer a trust to fail for want of a trustee, but will appoint one, she applied to the circuit court of the city of St. Louis to appoint a trustee for her to execute the trust created

in her behalf in her father's will. And, thereupon, on the thirteenth day of November, 1883, the court heard the application and appointed Joseph W. Branch as her trustee with all the powers in said will, and at the same time Branch accepted the trust and filed his bond in the sum of $42,000, with Brown and defendant Green as his sureties. The court found that she had attained her majority; that Branch held in his hand as her curator at that time $20,767.11 of her estate, subject to the order of her trustee. Some two years previous to this, Branch had filed his exhibit for a final settlement of his accounts as curator, and it had been continued from time to time.

On December 28, 1883, the record of the probate court, offered in evidence by plaintiff, shows that on that date Branch and Miss Florence E. Crookes, then Mrs. Garrison, and William O. Garrison, her husband, appeared in that court, and the final settlement was examined, and the court found a balance in the curator's hands of $20,772.36, which the court ordered paid over to her trustee under appointment of the circuit court in accordance with the will of her father. There is a controversy between counsel as to the action of the court in regard to this entry. Counsel for respondent maintains it was admitted in evidence, and counsel for appellant as confidently assert it was excluded by the circuit court. We have carefully read the full stenographic report of the offer, the objections, the colloquy between counsel, and the court and counsel, and we think the record entry was admitted, but the settlement itself was excluded.

We would not be misunderstood. In our view, the curator's itemized account, signed and sworn to, was *the settlement* alluded to, objected to and excluded by the court. In contemplation of law, that paper and accompanying vouchers with the action of the court upon it, as shown by the record, constitutes the settlement proper. But in all his offers counsel for plaintiff

in the circuit court drew a distinction between the paper writing containing the itemized account, with the affidavit attached, and the record entry, and on his final offer he clearly indicated that he considered the record entry in book 50, page 606, of the probate record already in.

On the same day, Branch, who now occupied the dual position of curator and trustee, executed this receipt:

"$20,767.11.          St. Louis, December 28, 1883.

"Received of Joseph W. Branch, curator of Florence Eliza Crookes, $20,767, as her estate in full.

"Joseph W. Branch,

"Trustee of Florence Eliza Crookes–Garrison."

Branch says that, in point of fact, on that day, he did not, as curator, go through any kind of ceremony or formality of turning over the actual money to himself as trustee. Nor did he deposit that amount as a trust fund in any bank, and open a new account with himself as trustee. It is now earnestly contended by counsel for appellant, that, inasmuch as there was not such a formal transfer of the fund itself, and as he placed his ward's moneys, as he received them, into his private account, and on that day they were mingled with his own, and not kept separate, that he never received these moneys *as trustee;* that he had committed a breach of his curator's bond, and was guilty of a *devastavit*, and the liability must fall on the sureties on the curator's bond, and not on the sureties on the trustee's bond.

We recognize the necessity of a careful discrimination here. We fully agree with counsel that "a fiduciary cannot transfer *his mere indebtedness* in one capacity *to himself* in another capacity so as to exonerate his sureties in the one, and throw the burden upon his sureties in the other. To make the transfer valid, it must consist of something more than a mere naked liability. It must be substantial assets if made

by an insolvent fiduciary." *Gilmer v. Baker*, 24 W. Va. 72. No one could better state the reasons why an executor or other fiduciary, who was *already guilty of a devastavit*, should not be allowed *at his pleasure* to shift his liabilities from one set of sureties to another, than Judge STAPLES did in *Smith v. Gregory*, 26 Gratt. 248. But in that case, he says, also, "that the law is well settled, that, where an executor or administrator *having assets in his hands* becomes the guardian of the legatee or distributee, he may elect to hold the share of such legatee or distributee in his character of guardian ; and thus, while he charges his sureties in the guardian bond, he exonerates those in the administration bond. And it is equally well settled, that in order to shift the responsibility from one class of sureties to the other, some distinct act or declaration is necessary on the part of the executor or administrator indicative of his intention to hold the fund in his character of guardian." Citing *Myers v. Wade*, 6 Rand. 444; *Swope v. Chambers*, 2 Gratt. 319.

The decision of that case turned largely upon the fact, that long after Gregory qualified as guardian he continued in his settlements to charge himself with the fund that *he had converted* as executor. Judge STAPLES well said : "When a fiduciary thus charges himself with assets, when he deliberately holds himself out to the world as chargeable *in a particular character*, neither he nor his sureties should be permitted to destroy the effect of admissions thus solemnly made, by any mere private entries of the executor himself. * * * We must look to the records only." The court of appeals in that case bases its opinion on the fact that *a devastavit had occurred prior to the attempted transfer* of the liability from the sureties of the executor to those of the guardian, and because the transfer so called was a private, secret arrangement of the executor alone, and was

not an unequivocal, distinct act, showing his election to hold the fund as guardian.

But, while it is true that a fiduciary, guilty of a *devastavit* or wrongful conversion, cannot thus, at his pleasure, shift the responsibility of one set of sureties to another, we think it is firmly settled, that when one person is both executor and guardian, or guardian and trustee, he may transfer his account as executor to his account as guardian or as guardian to trustee, and when he has made this election in a solemn, decisive way, he and his sureties will be bound by that election.

It is essential then in the very outset, to determine whether Joseph W. Branch had assets in his hands as curator belonging to his ward at the time he was appointed trustee. His testimony is unchallenged that he had received assets of his ward from her father's executor aggregating $20,000 ; that he carried this in his private account. He made annual settlements with the probate court, charged himself from time to time with the amounts he received, accounted for seven-per-cent. interest on the amount in his hands. On the trial of this cause in the court below, the defendant called him as a witness. His testimony does not indicate any desire to lean to one side or the other. He says that when he made his final settlement as guardian, he was worth $160,000 to $170,000 ; that he was able on that day to have paid his ward or her trustee the $20,767.11 found due on the settlement. Counsel now seem to question this statement. Waiving the rule that they are bound by his answers to their own questions, being their own witness, we think we are bound to accept this as a fact because it stands uncontradicted by any other fact or statement in the record.

Nor is it at all conclusive that Branch was guilty of a *devastavit* because he did not keep these funds of his ward at all times separated from his individual moneys. It was his duty to invest them for her, if he

could find a safe investment. If he could not, it was his duty to report that fact to the probate court. The prevailing practice fixed by statute is to require the curator to append to his settlement an affidavit showing to whom and on what security he has loaned his ward's estate, and if he has it on hand he must state that fact also. In the absence of evidence to the contrary, we must presume the probate court of St. Louis required the curator to make his settlement according to law. If so, and Branch disclosed to that court that he had the moneys in his own hand and these settlements were approved, it would hardly be said, there was such a wasting of the estate as would be a breach of his bond. Now outside of this failure to keep a separate account, there is no evidence whatever tending to show a *devastavit*, on the twenty-eighth day of December, 1883. So that we think the record does not sustain appellant in saying there were no assets to transfer. Nor do we agree with him, that solvency of the curator is an immaterial fact to be shown on this issue.

In *Gilmer v. Baker, supra*, the court said: "But if the fund was in the hands of Berry at the time said order was made, or if it came to his hands thereafter and before the injunction was granted, *or if he was then solvent, and able to pay it over, all that was necessary, in any of these events*, to fix his liability as administrator was for him to make his election to hold it as administrator, and manifest it by some act, declaration or admission." And again in that case it was said, "there was no evidence *that he was insolvent.*" See, also, *Gottsberger v. Taylor*, 19 N. Y. 150 ; *State to use of Gable v. Cheston*, 51 Md. 352.

In the case last cited, the supreme court of Maryland, in discussing this proposition, says: "But assuming the proposition to be true, that if the assets are wasted by the executor before his duties as such have ceased, so that nothing then remains in his hands

upon which the transfer can operate, his bond as executor will remain liable, we are very clearly of opinion there is no sufficient evidence in the record, that Coale had so wasted the assets at any date prior to the time when, by operation of law, they would be considered in his hands as trustee. It is not a mere technical *devastavit*, such as failing to keep the funds of the *estate earmarked and separate from his own*, or mingling them with his own, that will amount to such wasting. *But this is all that the evidence shows was done by this executor.*" He kept the money mingled with his own, and drew on it indiscriminately for his own purposes, as well as for the estate, "but there is nothing to show that, at any of the periods when the law would effect the transfer, he had not in hand, or under his immediate control, a sufficient sum to meet all his liabilities as executor, and above all there is not a particle of evidence that at these times *he was not perfectly solvent*, or that he was even embarrassed and not perfectly ready and able to meet promptly every demand," etc. "In this state of case we have no hesitation in deciding there was nothing to prevent the transfer, and, being of that opinion, we cannot sustain this objection." All of which will apply in this case. But notwithstanding Branch, the curator, was amply able to make the transfer, and had the funds, unless there was a transfer by operation of law, or he elected to hold them as trustee, his sureties cannot be charged with his subsequent default.

It was decided by this court in *State to use v. Hearst*, 12 Mo. 365, when the same person is executor of an estate and guardian of a distributee, and there is nothing to show in which capacity he holds funds, after payment of debts and settlement of the estate, he will be presumed to hold them as guardian. *Watkins' Adm'r v. State to use of Shaw*, 2 Gill. & Johns. 220; *Karr's Adm'r v. Karr*, 6 Dana, 3; *Adm'r of Johnson v. Ex'r of Johnson*, 2 Hill Ch. (S. C.) 285; *Walker's*

*Adm'r v. Walker*, 25 Mo. 367.   But, in our view of this case, it is unnecessary to invoke a presumption so strong. The authorities, with great unanimity, agree that where the same person succeeds himself in a different fiduciary relation, or where they both exist at one time, if he is clearly entitled to the trust fund in his new capacity, he is entitled to make the election, and, if he does so by some affirmative, unequivocal act, from that time he will be required to account in his new trust relation.   *Babb v. Ellis*, 76 Mo. 459.

Applying these principles here, when Mrs. Garrison reached her majority, it became the duty of her curator to turn over her estate to her trustee.   In obedience to this provision of the will, she went with her curator to the court having equity jurisdiction, and prayed that court to appoint her a trustee.   The court made the appointment.   The trustee made known to the court that he had in his hands $20,767.11.   His sureties were requested by him to execute a bond for $42,000, double the amount of the trust fund.   Executing this bond as sureties for the performance of this trust, being in the contemplation of the law before the court, they must be held to know the source of that fund.   The record appointing their principal a trustee *recites that he then had in his hands as curator this* amount.   As they were to stand as sponsors for his good conduct, how easily they could have ascertained in what condition this fund was.

But the curator then in December following gave notice of his final settlement.   He appeared before the probate court; his ward and her husband were there. By the appointment of the circuit court, the trustee had a right to be, and was, there to see that he received all of the trust fund.   The settlement was made, the balance was ascertained to be $20,762.36, and the probate court ordered it paid to Branch, "*trustee of* said Florence E. Crookes, now Garrison, under appointment of the circuit court," and thereupon he receipts

in his new capacity for the money, Could an act be more unequivocal? The court which has jurisdiction over his accounts as curator is informed of his appointment under a court of chancery. The probate court recognizes that appointment, and makes an order accordingly. The ward and beneficiary and her husband are all present. The settlement is approved on the record. Now, after all this, would the court cite Branch to make settlement as curator? If Branch's sureties as curator had desired to know whether they were released, and they had found these record entries, and had seen or known of this receipt, would they have been justified in considering themselves released? We think so. By every fair intendment, the defendant bound himself for this friend; we simply hold him to his agreement, no more. Any other result would work palpable injustice.

We hold the circuit court committed no error against the defendant. The judgment is affirmed. All concur.