THE STATE *ex rel.* HOSPES, *Appellant,* v. BRANCH *et al.*

Division Two, December 13, 1892.

1. **Guardian:** TRUSTEE: SURETIES. A guardian or curator, who is subsequently appointed trustee of his ward's estate, may elect to hold it in the character of trustee, and can thus transfer his liability from his sureties as curator to his sureties as trustee, but in order to do so some unequivocal act or declaration is necessary on his part as guardian indicative of his intention to hold the assets of the estate as trustee. (*Tittman v. Green,* 108 Mo. 22.)

2. ———: ———: ———. Such transfer, if made by an insolvent fiduciary, must embrace substantial assets; the transfer of a mere naked liability of the guardian will not discharge his sureties as such guardian.

The State ex rel. Hospes v. Branch.

3. ——: ——: ——: IMPEACHING RECEIPT. Where such guardian, when insolvent, makes final settlement, and files his receipt in the probate court, acknowledging as trustee to himself as guardian the receipt of funds of the ward's estate, the ward, in an action on his bond as guardian, may show such receipt to have been false, and that the guardian had misappropriated the estate.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*Valle Reyburn* and *Jos. S. Laurie* for appellant.

(1) The entry contained in the record of the probate court as to the acknowledgment of satisfaction, and the curator's discharge, is not conclusive evidence of payment by the curator of the amount found due at his final settlement. Tidd's Practice, p. 1041; Freeman on Judgments [4 Ed.] sec. 478*a;* Black on Judgments, sec. 1015; *Cohen v. Camp,* 46 Mo. 179; *State ex rel. v. Young,* 32 Kan. 292; *Stewart v. Armel,* 62 Ind. 593; *Dane v. Holmes,* 41 Mich. 661; *Beedle v. State ex rel.,* 62 Ind. 26; *Powell v. Powell,* 52 Mich. 432; *Naugle v. State,* 101 Ind. 284; *State ex rel. v. Wagers,* 47 Mo. 431; *State v. Cole,* 48 Mo. 70; *Lancaster v. Ins. Co.,* 62 Mo. 121; *Ellis v. Smith,* 42 Ala. 349; *Abbott v. Foote,* 146 Mass. 333; *Manning v. Manning,* 61 Ga. 137; *Maynard v. Cleveland,* 76 Ga. 52; *Carter v. Tice,* 120 Ill. 277; *Patterson v. Booth,* 103 Mo. 402; *State ex rel. v. Gray,* 106 Mo. 526. (2) The statutory notice of the curator's final settlement was directed to and served upon Alice Crookes, and she was represented at such settlement by attorney. By the terms of the will a trustee should have been appointed for her, to receive such notice and act for her at the final settlement. In the absence of proper notice and a proper representative, such settlement was not final and conclusive. Woerner's Administration,

sec. 505, and cases cited. (3) If the order of the probate court discharging the curator has the force and effect of a judgment, still it was competent in this action for plaintiff to show by evidence that said judgment, upon which defendants relied, was obtained by fraud. *McClanahan v. West,* 100 Mo. 309; Bigelow on Estoppel [5 Ed.] p. 216; Wharton on Evidence [3 Ed.] secs. 797, 1207.

*R. S. Macdonald* and *Edw. C. Kehr* for respondent Tittman.

(1) Branch's final settlement of the curatorship of Alice Crookes was made upon full notice to the ward, and her appearance to the same. It, therefore, stands on the footing of every other judgment of a court of competent jurisdiction, and is final and conclusive. Revised Statutes, 1889, secs. 5329, 5330, 5331; *State ex rel. v. Leslie,* 83 Mo. 60; *Garton v. Botts,* 73 Mo. 274; *State to use v. Hoster,* 61 Mo. 544. (2) Under the will of her father, the balance found due Alice Crookes, on final settlement of the curatorship of her estate, was not payable to her, but to her trustee, and the probate court accordingly so ordered. The order of payment is part of the judgment, and is, therefore, also final and conclusive. (3) The statute requires the ward, or the representative of the ward, having received satisfaction, to acknowledge the same of record in the proper court. The court is required to receive proof and determine the fact of satisfaction, and shall thereupon enter a discharge of the curator on the record. The act, therefore, is a judicial act, and, hence, conclusive. Revised Statutes, 1889, sec. 5332; *Dunsford v. Brown,* 19 S. C. 560. (4) Inasmuch as the records of the probate court show satisfaction of the judgment and discharge of the curator, the entry can be assailed only either by bill in

equity, or by motion in the cause itself to set the entry aside. Either form of procedure requires a hearing and a determination of the controverted fact upon proof. Until the entry is set aside in a direct proceeding, it cannot be impeached or controverted. 2 Black on Judgments, secs. 1014, 1016; *Chapman v. Blakemann*, 31 Kan. 684; *Crosby v. Wood*, 6 N. Y. 369; *Dunsford v. Brown, supra; Taylor v. Deblois*, 4 Mason, 131, 133. (5) Branch accepted the trust, and gave bond as trustee. He, therefore, by the most unequivocal acts, made his election to hold the money in his capacity as trustee, and the sureties on his bond as trustee are liable for the same, as this court has decided in *Tittman v. Green*, 108 Mo. 22.

GANTT, P. J.—Joseph Crookes, who died in St. Louis in 1874, left a will whereby he bequeathed a portion of his estate to his daughter Alice, a minor, and appointed Joseph W. Branch (defendant herein) as her curator. Branch qualified in the probate court of the city of St. Louis as the curator of Alice Crookes on April 12, 1875, giving a bond conditioned according to law in the sum of $32,000, with R. W. Alexander and R. M. Parks as sureties thereon.

The will further directed that when Alice attained her majority such portion of the estate as was bequeathed to her should be placed and vested in trustees for her sole and separate use.

Branch, as curator, received the interest or share of Alice in her father's estate under the will, and made annual settlements, indicating his receipts and disbursements. Alice attained her majority on February 25, 1883, and at the June term, 1884, of the St. Louis probate court, Branch, having given formal notice to her, filed and presented his final settlement as her curator. Said settlement showed on its face a balance

to be paid by him as her curator amounting to $20,511.95. The probate court, as shown by its records, formally approved said settlement on July 19, 1884, and after deducting certain costs and expenses ordered the curator to pay over the remaining balance, $19,832.15, to Alice Crookes' trustee. Such trustee, however, had not at that date been appointed, and the matter rested *in statu quo*.

On June 1, 1885, a petition in such behalf having been presented to the circuit court of the city of St. Louis, said Branch was appointed trustee of Alice Crookes in pursuance of the provisions of her father's will, and then and there qualified as such. On the sixteenth day of June, 1885, Branch appeared before the probate court, and filing a receipt (dated June 1, 1885) *from himself as curator of Alice Crookes to himself as her trustee,* for the balance found to be due from him on his final settlement as curator, to-wit, $19,832.15, he in open court, as her trustee, acknowledged payment of said balance to him as trustee.

The receipt is as follows:

"St. Louis, Mo., June 1, 1885.

"Received this day of Joseph W. Branch, curator of the estate of Alice Crookes, the sum of nineteen thousand, eight hundred and thirty-two and fifteen hundredths dollars ($19,832.15), in full payment of the balance found to be due from him at the final settlement of her estate in the probate court of St. Louis City, July 18, 1884. Evidence of my appointment as trustee by the circuit court of St. Louis city is hereby submitted.

"JOSEPH W. BRANCH,
"Trustee."

[Indorsed:]
"Filed June 16, 1885.     W. E. WAGNER,
"Clerk."

Thereupon the following entry was made upon the probate court record:

"TUESDAY, June 16, 1885.

,'Curatorship of } Satisfaction acknowledged, and
"Alice Crookes.  } curator discharged.

"Now comes Alice Crookes, late a minor, *by Joseph W. Branch, her trustee,* and acknowledges in open court full and entire payment and satisfaction of the balance ordered to be paid and delivered to her upon the final settlement of said Joseph W. Branch, curator of her estate, heretofore made herein; it is thereupon ordered by the court that said Joseph W. Branch, be and he is hereby, finally discharged as such curator.   Receipt filed."

On the twelfth of March, 1889, this action was instituted in the name of the state to the use of Richard Hospes, trustee of Alice Crookes, and at the relation and to the use of Alice Crookes against Joseph W. Branch as principal and E. C. Tittman, administrator of B. W. Alexander, deceased, and Elizabeth Parks, administratrix of Robert M. Parks, deceased, both of said sureties being dead at the time.

The petition is in usual form, counting upon the conditions of the bond, and alleging as a breach the misappropriation of all the balance found due on the final settlement.   Branch made default, and the other defendants, the sureties, pleaded the appointment of Branch as trustee by the circuit court, in pursuance of the will, his receipt as trustee for the estate he held as guardian and his discharge as above set forth. Plaintiffs filed replies denying all the new matter, and requiring strict proof.

On the trial plaintiffs made proof of demand by Hospes the succeeding trustee for the balance shown to be due as curator by the final settlement, a refusal to pay, and rested.

Thereupon defendants put in evidence the final settlement and receipt in full by Branch, and all the proceedings appointing him trustee and his qualification as such and discharge, and rested.

Plaintiffs then recalled Joseph W. Branch, and made the following offer in rebuttal:

"*Q.* Mr. Branch, when this receipt was given on the first of June, 1885, by yourself as trustee to yourself as curator, had you any money in your hands belonging to the estate of Alice Crookes that came into your hands as curator?"

Counsel for defendants objected to the question on the ground that the evidence is incompetent and immaterial, and that the entry of satisfaction and discharge in the probate court, given in evidence by defendants, *is conclusive and cannot be collaterally attacked; which objection was sustained by the court,* to which ruling of the court in sustaining said objection plaintiffs, by their attorney, then and there excepted at the time.

Plaintiff, by counsel, then offered to prove by the testimony of witness Branch, that at the time when the entry of satisfaction was made in the probate court, on June 16, 1885, *the witness did not have in his hands or under his control any assets belonging to the estate of Alice Crookes;* to which testimony so offered defendants objected on the ground that the same was incompetent and immaterial, and that the *entry of satisfaction and discharge is conclusive and cannot be collaterally attacked;* which objection the court sustained, and to which action and ruling of the court in so excluding said evidence plaintiff, by counsel, then and there excepted at the time.

This was all the evidence offered. Thereupon, at the request of defendants, Tittman and Parks, the court gave an instruction that under the evidence the jury would return a verdict for the defendants, Tittman

and Mrs. Parks, and, thereupon, plaintiff took a nonsuit with leave to move to set same aside, and afterwards filed said motion, and the court having overruled the same appealed to this court.

In *Tittman v. Green*, 108 Mo. 22, we held that a guardian or curator *having assets* in his hands as such, if subsequently appointed trustee of his ward, for the purpose of administering such fund, might elect to hold such fund in his character of trustee and thus shift the liability from his bondsmen as curator upon his bondsmen as trustee, but, in order to do so, some distinct unequivocal act or declaration was necessary on the part of the guardian, indicative of his intention to hold the fund as trustee. But we also distinctly held that a fiduciary could not transfer his mere indebtedness in one capacity to himself in another capacity so as to exonerate his sureties in one at the expense of the other.

To make the transfer valid, it must consist of something more than a mere naked liability. It must be *substantial assets, if made by an insolvent fiduciary.*

In that case the action was against the trustee bondsmen, and, because the uncontradicted evidence showed the principal to have been perfectly solvent when he made his election to hold the estate as trustee, and there was no other evidence of a *devastavit* beyond the fact that he kept his ward's money mingled with his own, we held the bondsmen for his trusteeship liable. In this case there is no evidence that Branch, the principal, was solvent when he qualified as trustee in the circuit court, and filed his receipt in the probate court for the amount found due from himself to his ward on his final settlement as testamentary guardian. The defendants, the sureties, insist that, when Branch filed this receipt and the court made the order of discharge, the discharge was conclusive, and could

not be attacked collaterally, whereas plaintiff contends that his receipt, like any other receipt, was only *prima facie* true, and was open to explanation or even contradiction, and that the trial court erred, in refusing to permit plaintiff to show that, in truth and in fact, Branch was wholly insolvent at that time, and did not have any portion of the assets represented by said receipt in his hands or under his control, and that it was a mere attempt to transfer the liability of his bondsmen for his curatorship to the shoulders of his bondsmen for his trusteeship. It will be seen at once that it is a matter of grave interest, not only to the two sets of bondsmen here, but to fiduciaries and their sureties, generally, and a matter of the gravest moment to the ward, Alice Crookes.

The controversy is narrowed down to the effect to be given to the filing of the receipt by Branch and the discharge granted by the probate court. There is not, and indeed cannot be any controversy between counsel, or any doubt in the mind of the court, that the final settlement of Branch, as curator, made as it was upon due notice to Miss Crookes, after she reached her majority, and duly approved by the probate court, had the force and effect of a final judgment; that is to say, it was conclusive of all matters that were properly the subject thereof, and cannot be questioned collaterally; but this is not true of the receipt in satisfaction. If we dissociate this receipt from the statute and the order of discharge, it would seem clear that it is open to explanation, and is not conclusive as to its recitals upon his ward, whose interest is adverse.

"A receipt is an admission only, and the general rule is that an admission, though evidence against the person who made it and those claiming under him, is not conclusive except as to the person who may have been induced by it to alter his condition." Wharton on

Evidence. Sec. 1064, note 4; *Straton v. Rastall*, 27 R. 366.

In *Fuller v. Crittenden*, 9 Conn. 406, it was said: "The true view of the subject seems to be that certain circumstances as would lead a court of equity to set aside a contract (such as fraud, mistake or surprise) may be shown at law, to destroy the effect of the receipt. In this way that all-important principle, that written evidence is not to be destroyed by parol,—that principle which Chancellor KENT says is not to be destroyed or shaken,—is preserved; and yet, where the circumstances are such that the receipt ought not to operate, the party need not be driven to a court of equity." And to this effect are the authorities generally. Greenleaf on Evidence [15 Ed.] sec. 305; 2 Wharton on Evidence, secs. 920, 1064, 1130, 1365; 19 American & English Encyclopedia of Law, 1115; *Cole Co. v. Dallmeyer*, 101 Mo. 57; *Gibson v. Hanna*, 12 Mo. 163; *Ryan v. Ward*, 48 N. Y. 204; *Fire Ins. Co. v. Wickham*, 141 U. S. 564.

"In fact an entry of satisfaction of a judgment *in the absence of a statute* is but a receipt, and like a receipt may be explained or avoided by satisfactory evidence that payment was not in fact made." 2 Freeman on Judgments, sec. 478a; *Dane v. Holmes*, 41 Mich. 661; *Powell v. Powell*, 52 Mich. 432; *Brown v. Bank*, 148 Mass. 300. In *Brown v. Bank, supra*, the execution had been returned satisfied, as appeared by the receipt of the attorney of record; and the point was made, that defendant was estopped to deny that the full amount of the judgment had been paid; but the court ruled that it was but a receipt which could be explained.

Let us then examine the statute, invoked as a defense in this case. Section 5330 provides that, upon final settlement, "the court shall order payment of the

amount found due  *  *  *  to such ward, having
attained majority, or to the successor of such guardian
or curator, as the case may be, and enforce such order
by attachment against the guardian and his sureties.''

"Sec. 5332.   Successors of guardians and curators
*having received all money and other estate* found to be
due to their wards, and wards having received all
money and other estate due from their guardians
or curators on the expiration of their guardianship or
curatorship shall acknowledge satisfaction of record in
the proper court, or if such ward, on due notice, neg-
lect or refuse to make such acknowledgment, or cannot
be found in the county to be served with notice, the
court shall enter a discharge of such guardians or
curators on the record, and give them a certificate
therefor.   *Provided,* that such court shall not enter
such discharge, nor give such certificate until the guar-
dian or curator aforesaid shall first exhibit to said court
the written statement of such ward acknowledging the
receipt of all money and other property due from said
guardian or curator, which said written statement, if
the ward be a married female shall be signed by herself
and her husband, and, if by a male ward, by himself,
and in every case acknowledged by said parties to be
their act and deed, before some officer authorized by
law to take acknowledgment of deeds.   And upon such
acknowledgment of *satisfaction* the guardian or curator
*shall be discharged of record.*''

The purpose of the statute was, *first,* to satisfy the
probate court in which the guardian had administered
his trust that he had complied with its order by trans-
ferring the estate to his ward; . *secondly, to satisfy of*
*record* the judgment, which was a lien on his lands, and
thus render his own estate free of incumbrances that
might hinder the transfer of the same, and *relieve his*
*bondsmen; third,* scrupulous regard for the rights of

the ward by preventing imposition by her guardian, by obtaining a receipt from the ward by false representations; hence, the requirement, that the ward should either appear in open court, where the court could explain to him or her his or her rights, and be assured the ward had received the estate before satisfaction was entered; or, if his or her personal presence could not be had for any cause, that a receipt acknowledged by the ward by an officer authorized to take acknowledgment of deeds must be filed.

It seems clear that these sections were intended to apply to wards who were *sui juris* as to their estates.

To estop Alice Crookes by this satisfaction *obtained by the purely ex parte act and representation* of the man against whom she had recovered a judgment for nearly $20,000, would be to confound all notions of right and wrong. It may be granted that third parties dealing with him ordinarily have a right to rely upon his acts, as trustee, and his ward would be bound thereby; but to say that a judgment debtor, and a fiduciary at that, may by a mere receipt of his own destroy a solemn judgment, as against his judgment creditor, his *cestui que trust*, cannot be tolerated in a court of justice. It is a familiar maxim of the law that a man cannot sue himself, cannot be both plaintiff and defendant in the same action, but, if this receipt and satisfaction were to stand, that principle would be expunged from the law of this state. Our conclusion is, that this receipt of Branch, made under the circumstances, is not within the spirit of the statute. The law will not permit one to contract with himself, much less will it allow a judgment debtor to satisfy a judgment against himself. *Cleere v. Cleere*, 82 Ala. 581; *Tankersly v. Pettis*, 61 Ala. 354; *In re Wood*, 71 Mo. 623. The final settlement fixed his liability, and was conclusive alike upon him and his sureties. The filing of this receipt was an

The State ex rel. Hospes v. Branch.

unequivocal announcement to the court, and an assertion that from that time he intended to hold the estate, as trustee, and not as guardian.  If at that time *he actually had her estate in his hands, or was solvent and able to turn over her estate*, his election by this distinct act or declaration affected the transfer, and such election will bind the sureties on his bond as trustee. *Tittman v. Green*, 108 Mo. 22;   *Smith v. Gregory*, 26 Gratt. 248; *Ruffin v. Harrison*, 81 N. C. 208; *Ruffin v. Harrison*, 86 N. C. 190; *Gilmer's Adm'r v. Baker's Adm'r*, 24 W. Va. 72.

On the other hand, if he was insolvent when he filed the receipt, and did not have her estate in his hands, but had misappropriated it, then she had a right to show that fact to bind him and his sureties on his guardian bond, for this was a breach of their undertaking.   In refusing to permit her to do this the circuit court erred.   The judgment is reversed, and the cause remanded.   All concur