THE STATE *ex rel.* HOSPES, *Appellant,* v. BRANCH *et al.*

. In Banc, January 22, 1895.

1. **Practice:** VERDICT.    A verdict can not rest upon facts where there is no evidence to establish them.

2. **Guardian:** SURETIES: TRUSTEE.    Where on a ward becoming of age her guardian was appointed trustee of her property and took a receipt from himself as such trustee, his sureties as guardian will not be relieved from liability by the fact of his solvency at the time of such receipt, the evidence showing that he had previously mingled the ward's estate with his own and lost it in personal ventures.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*Valle Reyburn* and *Jos. S. Laurie* for appellant.

(1)  Branch, while curator, converted to his own use funds belonging to his ward, Alice Crookes, amounting, in round numbers, to $20,000.  This was a breach of his bond as curator and at once fixed a liability thereon. *State to use v. McCormack,* 50 Mo. 569; *Bissell v. Saxton,* 66 N. Y. 55; *School District v. McDonald,* 39 Iowa, 564; *State to use v. Jones,* 89 Mo. 470.  Such liability continued and could only be discharged by actual restoration of said funds.  It is immaterial that upon the termination of his office as curator of Alice he succeeded himself in the capacity of her trustee and executed a

new bond.  Such fact could not serve to extinguish the liability then resting on the curator's bond.  *Orrick v. Vahey*, 49 Mo. 428; *Vivian v. Otis*, 24 Wis. 518; *Harris v. Harrison*, 78 N. C. 202; *Culp v. Lee*, 109 N. C. 675; *Conover's case*, 35 N. J. Eq. 108.  (2) The undisputed evidence shows that no money passed at the date of the receipt of July 16, 1888; that he did not have the funds in hand, owing to the fact that he had previously converted the same by investment for his own benefit, in various enterprises and speculations, and that the balance due from himself as curator was never paid.  Plaintiff was, therefore, entitled to recover judgment in this action.  *State to use v. Drury*, 36 Mo. 281; *State to use v. Berning*, 74 Mo. 87; *Eichelberg v. Gross*, 42 Ohio St. 549; *State ex rel. v. Weaver*, 92 Mo. 673.  (3) The court erred in the instruction defining solvency.  *State ex rel. v. Koontz*, 83 Mo. 323;  11 Am. and Eng. Encyclopedia of Law, p. 168; 22 *id.*, 837.  (4) The evidence shows that Branch was not solvent, within the correct meaning of the term.  (5) The court erred in matters relating to the evidence.  *First.*  The admission in evidence, in behalf of defendant, of the petition in a suit purporting to have been filed by the attorneys of Hospes as trustee of Alice against Branch and his sureties upon the trustee's bond, was erroneous.  *Cook v. Barr*, 44 N. Y. 156; *Dennie v. Wright*, 135 Mass. 28; 1 Rice on Evidence, p. 228; 1 Greenleaf on Evidence [15 Ed.], sec. 171 n. (*a*) and cases cited.  *Second.*  The court erred in refusing to allow plaintiff's counsel to examine defendant Branch, under the rules applicable to cross-examination of witnesses as provided by the statute.  R. S., sec. 8920.

*R. S. MacDonald* and *E. C. Kehr* for respondents.

(1) When a case has been decided in the appellate court, and again comes to such court by appeal or writ of error, only such questions will be noticed as were

not determined in the previous decision.    Whatever was passed upon must be regarded as *res adjudicata*. *Bank v. Taylor*, 62 Mo. 338; *Adair County v. Ownby*, 75 Mo. 282; *Conroy v. Iron Works*, 75 Mo. 651; *Keith v. Keith*, 97 Mo. 223.    (2) Upon the second trial of the case at bar nothing remained open, except the right of the plaintiff, in rebuttal of the *prima facie* case made by the receipt to show that Branch was insolvent at the date of the receipt.    *State ex rel. v. Branch*, 112 Mo. 661; *Tittmann v. Green*, 108 Mo. 22.    (3) The instructions given for the defendant and by the court on its own motion are correct declarations of law.    *Tittman v. Green*, 108 Mo. 22; *State ex rel. v. Branch*, 112 Mo. 661; *State to use v. Cheston*, 51 Md. 352; *Gilmer v. Baker*, 24 W. Va. 72.    (4) Admissions contained in a pleading may be used against the party in another suit; and this wholly regardless of the question whether the person himself was in fact cognizant of the pleading. The act of the attorney in such case will be held to be the act of the party.    *Dowzelot v. Rawlings*, 58 Mo. 75; *Anderson v. McPike*, 86 Mo. 293; *Schad v. Sharp*, 95 Mo. 573; *Bailey v. O'Bannon*, 28 Mo. App. 39; *Murphy v. Foundry*, 29 Mo. App. 541; *Nichols v. Jones*, 32 Mo. App. 657.

BRACE, C. J.—This is a suit prosecuted to the use of Richard Hospes, as trustee of Alice Crookes, against Joseph W. Branch, formerly curator of the said Alice Crookes, and the securities on his bond as curator. The petition charges, in substance, that on the fifth day of April, 1875, defendant Branch was appointed, by the probate court of the city of St. Louis, curator of the estate of Alice Crookes, a minor, and that said Branch, as principal, together with Alexander and Parks, as sureties, thereupon executed a bond in the sum of $32,000, conditioned that said Branch should well and

faithfully discharge the duties of his office as curator, according to law, which bond was accepted and approved; that said Branch as curator, did collect and receive large sums of money belonging to his ward, to wit, the sum of $29,514.32; that said Branch converted to his own use the sum of $20,511.95 of the moneys thus received by him, belonging to his ward, and has failed to account for or pay over the same, or any part thereof, either to Alice Crookes, she having attained her majority, or to relator, Hospes, who was appointed her trustee on July 23, 1888, by the circuit court of the city of St. Louis.

Defendant Branch made no answer. Both sureties, Parks and Alexander, were dead, and their administrators made answer in substance that Alice Crookes was the daughter of Joseph Crookes, who died in 1874, leaving a will whereby he bequeathed a portion of his estate to his daughter, then a minor, and directed that when she attained the age of eighteen years the same should be vested in a trustee, for her sole and separate use; that she became of age on the twenty-fifth day of February, 1883, and on July 19, 1884, said Branch, as her curator, made a final settlement in the probate court of St. Louis, which was approved by said court, and the balance shown by the same, to wit, the sum of $19,832.15, ordered to be paid by said curator to her trustee, as directed by the will of her father; that on June 1, 1885, the circuit court appointed said Branch trustee of said Alice Crookes, who thereupon qualified as such trustee, giving a bond with sureties in the sum of $40,000, for the faithful performance of his duties, which bond was approved by the court; that on said day said Branch, as curator, paid over to himself, as trustee, said balance of $19,832.15, and executed a receipt for the same from himself as curator, to himself as trustee; that on June 16, 1885, said Branch, as trustee,

appeared in said probate court and in open court acknowledged entire payment and satisfaction of the sum ordered by the court to be paid by the curator of Alice Crookes to her trustee, and that thereupon said probate court entered said ackowledgment of satisfaction and ordered that said Branch, as curator, be finally discharged.

Upon a trial of the case the facts alleged in the answer were all proven substantially as charged, except the fact that said Branch actually paid over to himself, as trustee, the said balance of $19,832.15, though executing and filing the receipt as charged. On the contrary, it was shown that no such transfer of the estate was made.

This is the second appeal in the case. The opinion in the first appeal is reported in 112 Mo. 661, to which reference is made for copies of orders of the probate and circuit courts, receipts, and other facts.

Upon this trial, evidence was offered by the parties which tended to prove the financial condition of Branch at the time of his appointment as trustee, and his ability to pay said balance. Four several receipts of Miss Crookes acknowleding the payment to her, by Branch as trustee, of sums of money aggregating about $2,650, were read in evidence. These were all dated subsequent to the appointment of Branch as trustee.

The case was submitted to the jury upon the theory declared in the following instructions given for the defendants.

"If the jury believe from the evidence that the defendant, Joseph W. Branch, executed the receipt dated the first day of June, 1885, and read in evidence by defendants, he thereby elected to hold, from that time forward, the fund recited in said receipt as trustee, and not as curator, of Alice Crookes, and if at that time he actually had her estate in his hands, or was solvent

and able to turn it over, then such election transferred the fund from himself as curator to himself as trustee, and the jury will find the issues herein for defendant, Eugene C. Tittman, administrator of the estate of Basil W. Alexander.

"The jury are instructed that the defendant, Joseph W. Branch, was solvent within the meaning of the foregoing instruction, if, at the time of the execution of the receipt of June 1, 1885, he was able to meet, and did meet, his obligations as they matured, and was at the time possessed of property subject to execution, out of which the debt due Alice Crookes could have been collected by process of law."

And the following, given by the court in modification of instructions asked for by the plaintiff:

"The court instructs the jury that the receipt dated June 1, 1885, given by defendant Branch, in his capacity of trustee, to himself as curator, read in evidence, and the order of the probate court made June 16, 1885, discharging said Branch as curator of Alice Crookes, read in evidence, do not have the effect of relieving defendants from liability, unless the jury are satisfied and believe from the evidence that on June 1, 1885, the defendant Branch had the money and estate of Alice Crookes in his hands, or that said Branch at that time was able to pay the said debt due Alice Crookes, and to pay his debts as they matured, and did pay them as they matured, and had property and assets sufficient, subject to execution, out of which the debt due Alice Crookes could have been collected by process of law."

The jury found for the defendants, and the plaintiff appeals.

These instructions, when analyzed, will be found to contain two propositions: *First.* That if, at the time Branch executed the receipt of June 5, 1885, as trustee, to himself as guardian of Alice Crookes, he had the

money and estate of the said Alice in his hands so as to be able to turn it over to her, the sureties on his bond as guardian are not liable. *Second.* That, although he did not then have the estate of the said Alice so in his hands, yet if he was at that time so solvent as to be able to pay her the debt due from him to her for her estate, and to pay his debts as they matured, and had property and assets sufficient, subject to execution, out of which the debt due the said Alice could have been collected by due process of law, then the sureties on his bond as guardian are not liable.

That Branch is insolvent, and that he has wasted the estate of said Alice, is beyond question; that either the sureties on his bond as guardian, or those on his bond as trustee are liable for such waste, and bound to make reparation to her therefor, is also beyond question. Which set of sureties shall be required to make good that waste is determined when it is ascertained *when* the waste was committed; for it is well settled law that, where there are two sets of sureties, one for the faithful discharge of the duties of the principal, while acting in one capacity, and the other for the faithful discharge of his duties while acting in another capacity, each is to be held liable only for breaches committed while their principal was acting in the capacity for which they bound themselves. *State to use v. McCormack*, 50 Mo. 568; *Tittman v. Green*, 108 Mo. 22. So that the really important question in the case is one of fact. Was Alice Crookes' estate wasted by Branch when he was acting as her guardian, or afterward when he became and was acting as trustee of her estate? The only difficulty in the case has grown up on the evidence by which that fact was sought to be established, the sureties in the curator's bond contending at first that it was not wasted while Branch was acting as guardian, because it was conclusively shown by his final settle-

ment in the probate court, and the receipt executed by him as trustee, that the estate of his ward was then in his hands unimpaired and was thereby transferred to himself as trustee; consequently there was no waste committed by him as guardian, and no breach by him of the bond on which they were sureties.

This was the defense to plaintiff's action when the case was here before, and this court then held, following *Tittman v. Green, supra,* that Branch could, by his receipt, transfer the assets of his ward from himself as guardian to himself as trustee and thereby discharge his sureties on his guardian bond, and impose future liabilities therefor upon his sureties in the trustee bond, provided he then had such assets in his hands to be transferred, but that he could not, by such receipt, transfer his mere indebtedness as guardian, to himself, as trustee, for the estate of his ward, which he did not then have in his hands to transfer, so as to charge the sureties on the trustee's bond with responsibility therefor and thereby release the sureties on the guardian's bond; and further held that the settlement and receipt were not conclusive evidence that Branch had the assets of his ward in hand to be transferred at the time he executed it, but that it was permissible to impeach the settlement and receipt by showing that he did not in fact then have the estate of his ward on hand to be transferred at the time he executed it, but had wasted it before the receipt was given; in which case, of course, there could not have been anything for the receipt to operate a transfer upon. This seems to be all that was in judgment in this cause on the former appeal.

The first proposition in the instructions is in consonance with, and warranted by, this ruling. The only objection that can be urged against it is that there was no evidence upon which to predicate it, for Branch, the only witness who testified on the subject, admits that

he did not have the estate of his ward in hand in condition to be transferred at the time of the execution of the receipt, but that long before that time he had converted it to his own use, and that he held no estate or money on account of his ward at that time; that all of it had gone into his own personal investments; that he had but a small amount of money on hand on his own account; and that, if some other person had been appointed trustee, he would have had to raise the money by hypothecating some of his property. The verdict can not rest upon a finding upon the first proposition for want of evidence to support it. Can it rest upon the second?

Counsel for the defendants maintain that it can, upon the authority of *Tittman v. Green, supra,* and the authorities therein cited, and upon the *dicta* in this case upon the former appeal. If it can be supported at all, it must be from these sources, for we have been unable to find support for it elsewhere. *Tittman v. Green* was a case in which Florence, a sister of Alice Crookes, to whom Branch sustained the same fiduciary relations as he did to Alice, and whose estate he treated in the same manner, sought to recover against *the sureties on his bond as trustee.* The contention in that case was that, as Branch "placed his ward's moneys, as he received them, into his private account," and on the day when he executed the receipt as trustee "they were mingled with his own and not kept separate;" he never received these moneys as trustee; that he had committed a breach of *his curator's bond,* and was guilty of a *devastavit,* and the liability must fall on the sureties in the curator's bond, and not on the sureties in the trustee's bond.

The court says in that case: "Outside of this failure to keep a separate account, there is no evidence whatever tending to show a *devastavit*" at the date of

the receipt, and ruled that "the mere fact of the failure of a curator to keep separate the trust and his personal funds is not conclusive of a *devastavit*," and that "the solvency of the curator was a material fact to be shown on this issue." The evident meaning of the learned judge who wrote the opinion was, that the fact that Branch may have mingled his ward's funds with his own, was a mere technical *devastavit*, which, still leaving her estate unimpaired in his hands, might not have resulted in any damage to her if afterward he had discharged his duty as her trustee. Consequently the sureties on his trustee's bond could not be relieved by proof merely of that fact; and that evidence of his financial condition at the time he executed the receipt was legitimate, as bearing upon. the question whether the waste was actual, resulting in the loss of his ward's estate, or merely technical "*absque injuria*." That such was the meaning of the decision in that case is also made manifest by the leading authorities cited in support of it, and from which quotations are made.

In *State to use v. Cheston*, 51 Md. 352, the executor had deposited the funds of his estate in bank to his credit *as executor*, and had also deposited, to the credit of the *same account*, funds of his own, and drew checks upon the same indiscriminately for his own purposes as well as for the estate, and the court says this was "all that the evidence shows was done by the executor," and held that it was a mere *technical devastavit* and did not show that the assets of the estate had been actually wasted. The principle of law to be deduced from that case upon the question in hand here, is that, if the property had been actually wasted, neither the presumption of law nor the admission of the party could operate as a transfer, for in such cases, there would be in reality nothing in existence to be transferred.

In *Gilmer v. Baker's Adm'r*, 24 W. Va. 72, the

court, in passing upon the question of the liability of a second set of sureties upon the administrator's bond for a fund which their principal had formerly held as commissioner, held such sureties liable, there not being, as the court says, "a particle of evidence tending to prove that he had disposed of the fund" as commissioner, or was insolvent at the time he was ordered to pay it over to himself as administrator and manifested his election to hold it thereafter in the latter capacity. There was in that case no question of a prior *devastavit* real or technical.. The court was simply determining a principle by which the liability of the second set of sureties should be fixed, and distinctly announced the doctrine that "a fiduciary can not transfer his mere indebtedness in one capacity to himself in another capacity so as to exonerate his sureties in the one and throw the burden upon his sureties in the other," citing as leading authority in support thereof, *Smith v. Gregory*, 26 Gratt. 248, in which, after an able review of the authorities, the court of appeals of Virginia, speaking by STAPLES, J., approves the doctrine laid down by the supreme court of Massachusetts in *Conkey v. Dickinson*, 13 Metc. 51, "that, if the sureties on the bond of the executor were liable by reason of *his misapplication of the assets*, it was not competent in him to transfer that liability to his sureties on the guardian's bond;" and, while recognizing, upon the authority of *Morrow's Adm'r v. Peyton's Adm'r*, 8 Leigh, 54, *that, "having the funds in his hands as executor*, he may elect to hold them in his character of guardian; and his sureties will be bound by his election," utterly repudiates the doctrine which would allow an executor guilty of a *devastavit* to shift his liability therefor from one set of sureties to another. The learned judge, after giving cogent reasons why such a doctrine ought not to obtain, winds up the argument by saying: "It is said, however, that much

of the evil thus apprehended is imaginary, as this right of election can only be exercised by an executor or administrator whose solvency is unquestioned. But it is often difficult, if not impossible, to determine, especially after the lapse of years, what was the pecuniary condition of the executor at a given time. He may be a man of fortune to-day and a bankrupt to-morrow. He may be apparently possessed of ample means and at the same time overwhelmed with debt. The law does not look to the solvency of the fiduciary, but to that of his sureties. The object in taking the bond is to protect parties interested against losses and contingencies of this very character."

By the second proposition of the instructions the trial court, in effect, held that Branch's solvency at the time of executing this receipt was equivalent to the estate of his ward which he ought then to have had in his hands in a condition to be turned over to her, but which he didn't have; or, in other words, that Branch, being solvent at the date of his receipt, his indebtedness to his ward for the conversion of her estate to his own use was equivalent to her estate. Obviously, this can not be correct doctrine, and we find no support for it in the rulings in the cases heretofore noticed from Maryland and West Virginia, nor in the case of *Ruffin v. Harrison*, 81 N. C. 208, 86 N. C. 190, cited in support of it.

The doctrine of this last case is thus stated: "When one is clothed with a double fiduciary capacity, and the balance remaining upon a *full execution of one trust* belongs to the other, if the amount has been definitely and authoritatively ascertained and *the fund is then in the trustee's* hands, the law makes the transfer." This doctrine is conceded, and was embraced in the first proposition of the instructions, but is a long way from reaching the second.

While this second proposition was not in judgment in *Tittman v. Green,* nor in this case on former appeal, it must be conceded that there are *dicta* in the opinions delivered in those cases which support it, and which may have well led the trial court into the mistake of adopting it. But we do not think we are estopped from correcting our own errors *in expressing the judgment of* the court, when the judgment itself is right, by the doctrine of *stare decisis* or *res adjudicata.*

The evidence in this case discloses a flagrant abuse by the curator of the trust reposed in him, while acting in that capacity, in converting the whole of his ward's estate to his own use and investing it in his own personal ventures which proved disastrous, and wrecked alike his own and his ward's fortune. For reparation for the ruin that has by him been thus wrought upon her patrimony while acting in that capacity, she has a right to look to the sureties who voluntarily bound themselves to stand good for his dealings with her estate; it is to them the law looks for such reparation and not to his solvency, which in the very nature of things can not wipe out his breach of trust, and of the conditions of his bond; or stand between her and her remedy on that bond against his sureties. The judgment is reversed, and cause remanded for new trial. All concur, except BARCLAY, J., not sitting.