THE STATE ex rel. JACOBS v. ELLIOTT et al., Appellants.

$\overline{157}$   609|
93a  $^1$617|

### Division One, June 30, 1900.

1. **Guardian and Curator: BOND: LIABILITY OF SURETY.** Sureties upon a curator's bond are only liable for money or property actually in the hands of such curator during the term covered by said bond.

2. **————: SETTLEMENTS: ADMISSIONS.** Statements and admissions made by the curator in his settlements with the probate court, that the money or property of his ward was in his hands, are not conclusive that such was the fact, in an action against a surety on his bond. Such statements and admissions are only presumptive evidence, and may be overcome by proof of the actual facts.

3. **————: CONVERSION OF TRUST FUNDS: DIFFERENT SETS OF SURETIES: EVIDENCE.** Where a curator deposits the funds of his ward in bank in his own name, mingling them with his own, it constitutes instantly a conversion of said trust funds, for which his bondsmen for that period are liable; and in an action against the sureties upon a subsequent bond, proof that said trust funds had all been checked out of bank before said subsequent bond was given, and that no evidence could be found after the curator's death of loans made by him, secured by mortgages on prime real estate, properly recorded, is sufficient to overthrow the adverse presumption raised by admissions and statements contained in the settlements of such curator.

Appeal from Jasper Circuit Court.—*Hon. Joseph D. Perkins,* Judge.

REVERSED.

*Howard Gray* and *McReynolds & Halliburton* for appellants.

(1) The annual settlements are only *prima facie* evidence of their correctness and the same rule applies to the surrender settlement of the executrix, and are not binding

or conclusive evidence that Fountain had the money on hand at that time, and the sureties may show anything contrary to the settlement, and a final settlement is only *prima facie* evidence as to sureties. State to use v. Jones, 89 Mo. 478; Fevey v. McGowan, 68 Mo. App. 612; State to use v. Martin, 18 Mo. App. 468; State to use v. Grace, 26 Mo. 87; Cohen v. Atkins, 73 Mo. 166; Nolley v. Calloway Co. Ct., 11 Mo. 447; Ritchey v. Withers, 72 Mo. 556; West v. West, 75 Mo. 204; North v. Priest, 81 Mo. 561. (2) It is well settled law that where there are two sets of sureties each set is to be held liable only for the breaches during the time they were sureties. State to use v. Atherton, 40 Mo. 220; State to use v. McCormack, 50 Mo. 570; State to use v. Jones, 89 Mo. 480; State ex rel. v. Alsup, 91 Mo. 174; State ex rel. v. Finn, 98 Mo. 537; Titman v. Green, 108 Mo. 33; State ex rel. v. Branch, 126 Mo. 454. (3) Fountain, not having the money of his wards in hand at the time of giving the bond sued on, and being insolvent, his making settlements and charging himself with the money can not bind the new sureties. State ex rel. v. Branch, 126 Mo. 457; McCarthy, Admr. v. Frazer, 62 Mo. 263. (4) The wards' money, not being actually in hands of Fountain either in cash or securities when the new bond was given December 20, 1888, the *devastavit* took place under the first bond and the sureties on the second bond (the one sued on) are not liable. State ex rel. v. Branch, 126 Mo. 448; s. c. 134 Mo. 592. (5) It is well settled that the obligations of sureties are to be strictly construed and their liabilities can not be extended by implication. Harrisonville v. Porter, 76 Mo. 360; Titman v. Green, 108 Mo. 33. (6) A naked liability of a curator to his wards, where the fund has been squandered, and the curator is insolvent, can not bind sureties on a bond given after this state of facts comes into existence. Titman v. Green, 108 Mo. 356.

*E. O. Brown* and *M. G. McGregor* for respondent.

(1) The public administrator is *ex officio* public guardian, and has charge of the estates of minors ordered into his hands by the probate court, and is liable as other guardians. Secs. 5336, 296, 299, 300, R. S. 1889. And he shall continue in charge of such estates until finally settled, unless he dies or is removed. Sec. 301, R. S. 1889. At Fountain's death it was the duty of his executrix to pay money and property to his successor and no demand therefor was necessary . Sec. 5333, R. S. 1889; Henry v. State, 9 Mo. 772; Brandt on Suretyship, sec. 82; Reid v. Mellins, 43 Mo. 308; Fields v. Baum, 35 Mo. App. 514; Goldsmith v. Taussig, 60 Mo. App. 463. (2) The annual settlements of Fountain, and the settlements of his executrix, are *prima facie* evidence against his sureties on the bond sued on; and they are liable under the conditions of their bond, whether the defalcation occurred before or after giving such bond; and without regard to whether the former bond was also liable or not. R. S. 1889, secs. 296, 300; Ibid, secs. 5333, 5318; State to use v. Grace's Admr., 26 Mo. 91; State to use, v. Martin, 18 Mo. App. 474; State to use v. Roper, 82 Mo. 62; State to use v. Jones, 89 Mo. 478; West v. West's Admr., 75 Mo. 208; Ennis v. Smith, 14 Howard 418; Treweek v. Howard, 105 Cal. 434; Bellinger v. Thompson, 26 Ore. 320; Douglas v. Kessler, 57 Ia. 63; Foster v. Wise, 46 Ohio St. 20; Pinkstaff v. People, 59 Ill. 148; Steele v. Reese, 6 Yerg. 263; Roper v. Sangamon Lodge, 91 Ill. 518; Morley v. Metamora, 78 Ill. 394. Even if there was a breach of his former bond, the failure of his representative to pay over the balance shown by his and his executrix' settlements was also a breach of the bond sued on. The liability was a continuing one. State to use v. Drury, 36 Mo. 281; State to use v. Williams, 77 Mo. 470; State to

use v. Berning, 74 Mo. 97; Wolff v. Schaeffer, 74 Mo. 158; Haskell v. Farrar, 56 Mo. 497; State to use v. Bilby, 50 Mo. App. 167; State to use v. Branch, 134 Mo. 602; State to use v. McCormack, 50 Mo. 568; 2 Wag's Statutes, p. 971, sec. 36; R. S. 1889, secs. 301, 305, 7172; Ingram's Admr. v. McCombs, 17 Mo. 558; Am. Dig. 1895, p. 3826, sec. 53; Tittman v. Green, 108 Mo. 40; Bobb v. Ellis, 76 Mo. 467; State ex rel. v. Branch, 126 Mo. 448; s. c. 112 Mo. 661. Even if it has been shown that Fountain did not have the money at the time this bond was given, that fact would not overcome the presumption that the money was withdrawn to loan it as the law required him to do. It does not devolve on respondent to show that he performed this duty; but the appellant must overcome the presumption of law, and the fact that he accounted for interest received for said money in his settlements after giving the bond sued on is conclusive evidence of liability on this bond. Ivy v. Yancey, 129 Mo. 509; Long v. Joplin, M. & S. Co., 68 Mo. 431; Owen v. Baker, 101 Mo. 413; Bailey v. Winn, 101 Mo. 660; State to use v. Paul's Exr., 21 Mo. 56; Am. Digest, 1895, p. 3826, sec. 53.

MARSHALL, J.—This is a suit by Jacobs, curator of the estate of Guy L. and Maud V. Wade, on the official bond of Isaac Fountain, deceased, as public administrator of Jasper county, which bond was approved December 20, 1888. Isaac Fountain was elected public administrator in 1880, and duly qualified with sureties other than the defendants herein. He was re-elected as such administrator, in 1884, and duly qualified, likewise with other sureties. On February 13, 1888, he was ordered by the probate court to take charge of the estate of the said minors and did so. On April 23, 1888, as such curator he collected $1,962.29 belonging to the estates of said minors, and on May 20, 1888,

he collected for such estates the further sum of $1,500. He deposited the amounts so collected in the First National Bank of Carthage on the days they were respectively collected, in his individual name. On April 26, 1888, he commenced checking against his account in the bank, and continued to do so, with the result that on the twentieth of December, 1888, he had not only drawn out of the bank the whole amount so deposited, but his account with the bank was overdrawn $83.71. At the regular election in 1888 he was elected for the third time as such public administrator, and gave the bond here sued on with John Roesch and Moses Elliott as sureties, which was approved on December 20, 1888. Thereafter he continued to make settlements in which he charged himself with said amounts so collected, and interest thereon, and took credit for charges and expenditures, until his death in January, 1897. After his death his widow, as his executrix, made a settlement in the probate court in which she showed that he owed the estate of said minors $4,235.28. His executrix found among his papers only one note payable to him as curator of the Wade children, for $300, which was secured by mortgage on real estate. John Roesch, one of the sureties aforesaid, had died in the meantime, and W. B. Kane was his duly appointed administrator. The amount so shown by the executrix not having been paid to the relator as the new curator of the estates of said minors, this action was instituted by him on the bond approved December 20, 1888, against Nancy Fountain, as executrix of Isaac Fountain, W. B. Kane, as administrator of the estate of John Roesch, and Moses Elliott, the sureties on said bond. The trial developed the facts here stated.

The court gave and refused instructions as follows:

"1. The court declares the law to be that if the court finds from the evidence that at the time of approval of the bond sued on in this case, Isaac Fountain, as curator of the

Wade heirs, had used the assets of said estate in private business, and did not have them in hand, although he was solvent, then the findings should be in favor of the defendants Elliott and Kane, notwithstanding the fact that Fountain kept up his settlements as curator of said heirs, and charged himself up as though he had the money on hands.

"2. The court declares the law to be that if the court finds from the evidence that said Fountain did not have the estate of the Wade heirs in hands at the time of execution and approval of the bond sued on, but had used it in private business prior to said time, and that said Fountain was not solvent, then the fact that he charged himself up in settlements of the heirs of said estate is not binding upon Elliott and Kane and the finding of the court will be in their favor."

The defendant asked and the court refused to give the following instructions:

"3. The court declares the law to be that under the pleadings and evidence in this cause the finding must be for the defendants Elliott and Kane.

"4. The court declares the law to be that Isaac Fountain being public administrator in February, 1888, and having been ordered by the probate court of Jasper county, Missouri, to take charge of the estate of the Wade heirs, and having taken charge of said estate as such public administrator during his then existing term of office, his having been re-elected public administrator in 1888, and his having given a new bond on December 20, 1888, that said new bond did not become liable for the estate of the said Wade heirs in the hands of said Fountain."

At the request of plaintiff the court gave the following instructions:

"1. The court declares the law to be that under the evidence the plaintiff is entitled to recover and the court should find the issues in favor of the plaintiff in the sum of

ten thousand dollars the penalty of the bond sued on and assess the relator's damages thereon at the amount shown to be due by the surrender settlement of Nancy C. Fountain, executrix, together with six per cent interest thereon from the eighth day of May, 1897.

"2. Even if Isaac Fountain had deposited the money of his wards in the bank and he had withdrawn the same from such deposit before giving the bond sued on, the court declares the law to be that the legal presumption arising therefrom would be that such withdrawal was for the purpose of loaning and investing said money as the law directs, and that it was not for the purpose of converting said money to his own use. And it devolves upon the defendant to rebut said presumption by showing from the evidence that said Fountain after such withdrawal converted said money to his own use before the bond sued on was given.

"3. The mere fact that Fountain had no money in bank to his credit, either in his individual capacity or as curator of said minors, at the time the bond sued on was given, is not inconsistent with the presumption that his wards' money had been withdrawn for loaning and investing as the law directs; nor is such fact sufficient to overcome the presumption arising from the statements in his annual settlements showing a balance on hand carried forward to his wards' credit, or the final accounting by his executrix with his successor on which a balance of $4,097.60 is shown to be due.

"4. The annual settlements of Isaac Fountain as such curator and the settlement of his executrix are evidence against the defendants and presumptive evidence as to the amount of their liability in this action, and it devolves upon the defendants to show by evidence sufficient to outweigh or overcome the presumption arising from said settlements

that defendants are not liable and that the liability is alone against the former bond of said Fountain."

The court gave judgment for the plaintiff for the full amount sued for, and the defendant Kane, administrator of Roesch, and Elliott appealed.

## I.

It is apparent from the instructions given for the defendant that the trial court properly declared the law as to the liability of the sureties to be that they are only liable for money or property that actually was or came into the hands of the curator during the term covered by the bond on which they were sureties, and that the mere statements by the curator in his settlements, that the money or property was in his hands is not conclusive on the sureties that such was the fact. This is in accordance with the law. (State ex rel. v. Branch, 126 Mo. 448; Ibid, 134 Mo. 592; Ibid. 151 Mo. l. c. 637]. In the case cited, Branch was curator of Alice Crooks, and while acting as such he mingled the trust funds with his individual funds, and lost both. Afterwards he became her trustee, and as trustee receipted to himself as curator for the trust fund, and upon exhibiting his final settlement as curator to the probate court showing that the trust fund was in his hands, that court ordered him to turn over the fund to himself, as trustee, and upon his exhibiting his receipt therefor as trustee, to himself as curator, the probate court approved his final settlement and discharged him as curator. When the minor became of age, Branch did not turn over the trust fund to her, and suit was brought against him as trustee and his sureties on his bond as trustee. This court held that the sureties on his bond as trustee were not liable, because no assets came into his hands as trustee. This court, in Banc, speaking through ROBINSON, J., said in that case

(151 Mo. l. c. 637): "A person holding funds in one fiduciary capacity can not by his own election shift the responsibility therefor from one set of sureties to another. He can not, as already seen, by signing a receipt to himself in the capacity of trustee, without having any funds at hand, transfer his liability and that of his sureties as curator to himself and his sureties as trustee. It can only be done by the transfer of substantial assets. By the filing of the receipt in the probate court he solemnly declared and asserted that from that time it was his intention to hold the estate as trustee and not as guardian, but if he did not have the estate in his hands, and by reason of his insolvency was unable to turn over the estate, he could and did not come into possession of the funds in the capacity of trustee, and thus as guardian he failed to carry out the order of the probate court, and for such dereliction of duty his bondsmen" (as curator) "were liable to the extent of the amount of the estate found by the probate court on final settlement to be in his hands" (as curator).

Thus the trial court properly declared the law in this respect. Counsel for the plaintiff, however, is not content with this, but goes further and says: "We contend (1) that even if the defalcation occurred before the giving of the bond sued on that, charging himself in settlements and bringing balances down from one annual settlement to another, made Fountain's securities under this last bond liable as well as the first; (2) that the presumption is that the last bond is alone liable, and there is no evidence to overcome the presumption, and hence the relator would not be justified from the evidence to look to the former bond."

The first branch of this contention is settled adversely to the plaintiff by the decisions of this court in State ex rel. v. Branch, 112 Mo. l. c. 672; Ibid, 126 Mo. 448; Ibid, 134 Mo. 592; Ibid, 151 Mo. 622, wherein it was held that the

sureties are only liable for assets actually in the hands of the principal in the bond during the term for which they are sureties, and that to hold that the mere *ex parte* statements of the principal, such as settlements or receipts, that he has such assets in his hands during such term are conclusive against the sureties that such is the fact, "would be to confound all notions of right and wrong," and "can not be tolerated in a court of justice."

The decisions referred to by the plaintiff only go to the extent of holding that such settlements are presumptive evidence that the money was in the hands of the principal in the bond, but this is qualified by the statement that this is true, "nothing more appearing" (State to use v. Paul's Ex'r., 21 Mo. 56), or "where it is not shown that the defalcation occurred during such prior term." (United States v. Dudley, 21 D. C. 337). Such presumptions are always subject to be overcome by proof of the actual facts, and the facts, when ascertained, control the case in preference to any presumption.

## II.

The instructions given for the plaintiff clearly show that the trial court believed that the evidence adduced was not sufficient to show that the defalcation in this case occurred during a prior term of the public administrator, but did not show that it occurred during the term for which the defendants were sureties.

There is no conflict in the testimony, and therefore the legal effect of the uncontradicted evidence is open to inquiry in this court.

The bond sued on was approved December 20, 1888. The principal on the bond was the public administrator, and this bond was given to cover his acts during his third successive term. During his second term, he collected the money, and deposited it in the bank in his own name, and

mingled it with his individual funds.　He checked against it and on the day this bond was approved he had drawn it all out of the bank and was overdrawn $83.71.　After his death the only trace of any of this trust money, was a note for $300 payable to him as curator of the estate of these minors and secured by a mortgage on real estate.　The probate court records do not show any loans of this fund reported by him or approved by the court, and the records of Jasper county show that the $300 mortgage is the only mortgage ever held by him, so far as such records can speak.　The trial court held that this state of facts was not sufficient to overcome the presumption arising from the annual settlements, as the legal presumption arising from such withdrawal of the trust funds from the bank is that it was done for the purpose of investing it for the benefit of the trust and not for the purpose of converting it to his own use.　But in so holding, the trial court overlooked the pregnant fact disclosed by the evidence that he never did loan the trust fund, except the three hundred dollars; never reported any such loan or obtained the approval of the probate court of any loan as was his duty to do annually (sec. 5318, R. S. 1889), and that the records of Jasper county do show that he never had any loan, secured by real estate, except the $300 loan, and he could only loan "on prime real estate security" (sec. 5318, R. S. 1889), and after his death no evidences of any loan, except the $300 loan, were found.

This is as strong proof of a negative pregnant as could be made.　The instant he deposited the money in the bank in his own name and mingled it with his individual funds, it constituted a conversion of the trust fund, and "such conversion could only be excused and his bondsmen" (for that period) "relieved of their liability by showing that he had the cash actually in hand."　[State ex rel. v. Branch, 151 Mo. l. c. 637.]

It could not reasonably be expected that the sureties

could prove to whose order each of the checks on his bank had been drawn, and thus affirmatively show by the payees of such checks that the money was loaned to them, for when a depositor's account with his bank is balanced, the checks are returned to the depositor, and the books of the bank only show how much he deposited and when it was deposited, and how much he drew out and the amount of each check, but do not show the names of the payees of the checks. When, therefore, it was shown that the trust fund had all been drawn out of the bank before this bond was given, and that no loans (except the $300) were ever made by him on prime real estate security, evidenced by mortgages properly recorded, and that no evidences of any such loans were found after his death, the conclusion becomes irresistible that there was a misappropriation of the trust funds before this bond was given, and that no trust funds actually came into his hands during the term for which these sureties were responsible for his acts, and that the presumptions of law arising from his settlements and that are indulged that every officer or person does his duty, have been completely overcome by the facts proved, and that these sureties are not liable. For this reason the circuit court erred in not so holding.

This necessarily disposes of the further contention of the plaintiff, that the failure of the curator (who was dead at the time) to turn over the amount found to be due by him to the estates of these minors, constitutes a breach of this bond, and that these sureties are liable for such failure no matter whether any money ever actually came into his hands during the term covered by this bond or not.

The judgment of the circuit court as to the sureties, Kane, administrator of Roesch, and Moses Elliott, who are the only appellants here, is therefore reversed.

All concur.