**J. Scott KING, Conservator ad litem for the Estate of Charles Patrick Jones, Appellant,**

**v.**

**Helen G. JONES and State Farm Fire and Casualty Company, Respondents.**

**No. WD 54233.**

Missouri Court of Appeals, Western District.

July 28, 1998.

David A. Vorbeck, Kansas City, for Appellant.

Saphronia Young, Kansas City, for Respondents.

Before ULRICH, C.J., P.J., and
HOWARD and RIEDERER, JJ.

HOWARD, Judge.

This is an appeal from the trial court's grant of Respondent State Farm's motion for summary judgment against Appellant J. Scott King in King's action to determine liability of Helen Jones ("Jones") and State Farm for funds mishandled or misappropriated from the estate of Charles Patrick Jones ("Patrick"). King contends that the trial court erred in granting summary judgment for State Farm because Helen Jones breached her duty to faithfully administer and account for the estate funds of her son, Patrick, while she was bonded by State Farm.

We affirm.

### Facts

Charles Patrick Jones was severely injured in an automobile accident on November 4, 1989. The intoxicated driver of the other vehicle was determined to be at fault, but was uninsured. Patrick was nineteen years old and living with his parents at the time of the accident. Shortly after the accident, Patrick's mother, Helen Jones, hired an attorney to pursue recovery against various uninsured motorist insurance policies.

Jones was issued letters of guardianship and conservatorship for a no-asset estate in the Circuit Court of Jackson County, Missouri, Probate Division, on February 11, 1991. Jones received $29,500 as conservator and guardian of the estate of Charles Patrick Jones on October 28, 1991. On January 27, 1992, Jones filed an application seeking approval from the Circuit Court of Jackson County, Missouri, Probate Division, of a settlement of claims against insurance policies, and requested that the court approve settlements for the policy limits of $95,000. Jones applied for State Farm's bond in the amount of $95,000 on January 27, 1992. State Farm filed a Bond of Conservator with Corporate Surety to the State of Missouri to and for the use and benefit of Charles P. Jones, protec-

tee, in the amount of $95,000 with the probate court on February 19, 1992.[1] Jones was issued letters of guardianship and conservatorship in an asset estate on February 26, 1992.

Prior to January 27, 1992, Jones expended the $29,500 she received as guardian and conservator of the estate of Charles Patrick Jones to invest in the purchase of real estate and/or to invest in a prepaid lease of real estate. On March 4, 1992, Jones filed an Annual Report of Guardian/Conservator with the probate court, reflecting that she received $29,500 on October 29, 1991, from a lawsuit, and that she spent $29,500 to purchase a home. On May 28, 1992, Jones filed an Inventory of Property with the probate court, listing total personal property in the estate at $31,202, and listing an "insurance settlement for auto accident" with a value of $29,500 as personal property for the estate. Jones' investment and purchase of the real estate and/or the prepaid lease did not provide the estate or protectee with any ownership interest in the real estate purchased.

The probate court disapproved of Jones' purchase or lease of the real estate. On April 5, 1993, the Circuit Court of Jackson County, Missouri, Probate Division, appointed King as conservator ad litem, finding that "grounds exist for the appointment of a conservator ad litem to investigate the propriety of the conservator's management of the ward's finances." On November 24, 1993, King submitted his "Report of Conservator Ad Litem" to the probate court, summarizing his investigation into Jones' handling of estate funds.

On December 1, 1993, Jones submitted to the probate court a response to King's report of conservator ad litem, acknowledging that Jones received $29,500 in estate funds, and stating that she used those funds, alternatively, to purchase real property, or to purchase a prepaid 15-year rental agreement for that property, and acknowledging that the protectee had no "interest" in the ownership of the property purchased. On December

10, 1993, King advised Judge Borron, of the probate court, that the protectee's interest in the real property was unprotected and that the protectee's investment was exposed to loss.

On December 14, 1993, Judge Borron advised King and Jones that Jones' investment as conservator in the real property in question, without court authorization, and especially in view of the fact that the protectee has no legal interest in the property, was a breach of fiduciary duty, rendering Jones and her surety liable for any losses sustained by the protectee. On September 23, 1994, King advised the probate court of the estate's exposure to loss, and that Jones' handling of the estate investment left the protectee's interest in the investment "ill-defined and unprotected."

From November 26, 1991 through November 22, 1996, the real property in which Jones invested estate funds of $29,500 has been owned, alternately, by Jeffrey G. Jones and Rebecca K. Jones, and by Rebecca K. Riley–Jones, and the property has been subjected to indebtedness and security interests in the amounts of $32,750, $19,250, and $5,200, for debts of Jeffrey G. Jones and Rebecca K. Jones, Rebecca K. Weehunt, and Henry A. Weehunt. Jones has not turned over to King any portion of the $29,500 that Jones received in October 1991 from estate funds. Jones has not filed a settlement, as conservator/guardian, that the probate court has approved, accounting for any funds she received as conservator/guardian of the estate. King filed his petition to determine liability against Jones and State Farm on June 17, 1996.

On January 21, 1997, King and State Farm stipulated to certain facts and to the admissibility of documents, pleadings, and discovery responses, for purposes of submitting King's petition to determine liability to the court for determination on the parties' cross-motions for summary judgment. On January 28, 1997, King filed his motion for summary

---

1. The bond states as follows: "The condition of the bond is, that if Helen G. Jones, who has been appointed conservator of the estate, shall faithfully administer said estate, account for, pay and deliver all money and property of said protectee, and perform all other things touching such conservatorship required by law, or the order of decree of any court having jurisdiction, then the above bond to be void, otherwise to remain in full force."

judgment on stipulated facts and record, together with his legal memorandum in support thereof. On January 28, 1997, State Farm submitted its trial brief to the court. On February 7, 1997, King filed his petitioner's responsive legal memorandum in support of summary judgment, and State Farm filed its reply brief and response to motion for summary judgment and its request for findings of fact and conclusions of law with the trial court.

On March 10, 1997, the trial court entered its summary of proceedings, findings and judgment, and on June 5, 1997, the trial court entered its judgment nunc pro tunc, sustaining King's motion for summary judgment against Jones, overruling King's motion for summary judgment against State Farm, and sustaining State Farm's motion for summary judgment against King. The court found that the breach of Jones' duty to preserve the funds of the protectee occurred prior to the execution of the bond. The court awarded King judgment against Jones in the amount of $29,500, plus interest at the rate of nine percent per year from October 29, 1991, attorney's fees in the amount of $5,350, and costs of the action.

On April 18, 1997, King appealed from the trial court's summary of proceedings, findings and judgment overruling King's motion for summary judgment against State Farm and sustaining State Farm's motion for summary judgment against King.

### Standard of Review

The parties disagree about the appropriate standard of review in this case. King argues that appellate review of a grant of summary judgment is essentially de novo, and therefore the appellate court should employ the same criteria that the trial court should have employed to determine the propriety of the motion initially, reviewing the record in the light most favorable to the party against whom judgment was entered. *Rice v. Hodapp*, 919 S.W.2d 240, 243 (Mo. banc 1996).

State Farm argues that because this case was submitted to the trial court on a stipulation of uncontroverted facts, the determination of the trial court is considered a judgment on the merits. *Cappo v. Allstate Life*

*Ins. Co.*, 809 S.W.2d 131, 132–33 (Mo.App. W.D.1991). Accordingly, State Farm argues, our review should apply the standard enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and not the standard traditionally associated with summary judgment. *Id.* at 133.

■ Although the outcome of this appeal would be the same if we employed the standard espoused by King, we believe State Farm has stated the correct standard of review. Therefore, we will affirm the trial court's judgment when substantial evidence supports it, it is not against the weight of the evidence, and the trial court correctly declares and applies the law. *Murphy*, 536 S.W.2d at 32.

### Argument

King's two points on appeal are really part of the same argument. Therefore, we discuss them together. King contends the trial court erred in sustaining State Farm's motion for summary judgment against him, because the facts, as established by the parties' stipulation, the probate court record, and the trial court record demonstrated that Jones had failed to faithfully administer and account for the estate funds, and that State Farm, as Jones' surety, was liable to the estate for Jones' failures to carry out her duties and the conditions of the bond State Farm issued to the estate and to the State of Missouri.

King argues that the trial court erred in finding that the breach of the fiduciary's duty to preserve the funds of the protectee occurred prior to the execution of the bond, because Jones' obligations and duties as conservator and guardian of the estate included her duty to faithfully administer the estate, account for, pay and deliver all money and property of the estate, and to invest it prudently and perform all other duties required by law, and at the termination of the conservatorship to deliver the assets of the protectee to the persons entitled to them.

■ We first discuss whether the bond covers the initial spending of the funds, which occurred prior to the execution of the bond. The general rule is that in the ab-

sence of an express agreement to the contrary, the surety is not responsible for the acts of the principal occurring prior to the execution of the bond. *In re Keisker's Estate*, 350 Mo. 727, 168 S.W.2d 96, 99 (1943); *State ex rel. Jacobs v. Elliott*, 157 Mo. 609, 57 S.W. 1087, 1089 (1900); *Gilliam v. Hopkins*, 472 S.W.2d 436, 447 (Mo.App.1971); *State ex rel. Short v. Hardy*, 200 Mo.App. 405, 206 S.W. 904, 906 (1918). We find that in this case, the actual spending of the funds occurred prior to the execution of the bond, and there was no express agreement that made State Farm liable for acts occurring prior to the execution of the bond. Therefore, State Farm is not liable for Jones' act of spending the funds.

■ We next discuss whether any breach of duty occurred after the bond was executed. King argues that Jones not only had a duty to initially invest the funds properly, but that she also had a continuing duty to faithfully administer and account for the estate funds, and her breach of that duty occurred while her bond was in effect, thereby making State Farm liable for the breach.

To support his claim, King relies primarily on the case of *In re Keisker's Estate*, 350 Mo. 727, 168 S.W.2d 96 (1943). In that case, the guardian of a veteran and his estate filed a bond with an insurance company on April 19, 1930. *In re Keisker's Estate*, 168 S.W.2d at 97. On May 21, 1930, without obtaining authorization from the court to do so, the guardian sold some government bonds belonging to his ward and purchased some mortgage bonds. *Id.* In his first annual settlement after this transaction, he stated that he had sold the government bonds and purchased the mortgage bonds. *Id.* at 98. In his later annual statements, he showed that he retained these mortgage bonds without stating the terms of the deed of trust, the name of the maker, or the description or value of the real estate security. *Id.* The surety company became insolvent prior to May 5, 1932, on which date the guardian filed a second bond with another surety company. *Id.* at 97. On May 10, 1938, the guardian resigned and tendered his final account, to which the Administrator of Veterans' Affairs filed exceptions. *Id.* at 98. In affirming the

trial court's judgment against the guardian and his surety on the second bond, the court stated that

> [t]he bond was not by its terms retrospective and the purchase of the mortgage bonds by the guardian was made before the bond was executed. However, the purchase of the mortgage bonds was not permissible under the statute and *it was the continuing duty of the guardian to change the investment so as to comply with the statute.* It was also the duty of the guardian to report on each annual settlement the description and value of the real estate security, etc. This he failed to do, and, by the express terms of the statute, such failure constituted a breach of the bond. [Citation omitted.] Such breach occurred while the bond executed by the appellant was in force and for such breach appellant is responsible.

*Id.* at 99. (Emphasis added.) The court stated the general rule that sureties are not responsible for the acts of the principal performed prior to the execution of the bond. *Id.* However, the court's finding that "it was the duty of the guardian to change the investments in compliance with the statute and to report such change in his settlements as required by the statute" implied that the guardian was able to do so. *Id.* at 100.

King also cites *Gilliam v. Hopkins*, 472 S.W.2d 436 (Mo.App.1971). In *Gilliam*, a guardian was appointed for an incompetent person on May 15, 1965. *Gilliam*, 472 S.W.2d at 438. The guardian went from May 15, 1965 to September 11, 1965 without executing a bond. *Id.* at 447. The guardian reported selling some property belonging to the ward on August 20, 1965. *Id.* at 438. On September 11, 1965, she executed a statutory bond in the sum of $5,000, and on the same day the guardian received the purchase money for the property and delivered a guardian's deed to the purchasers of the property. *Id.* On September 20, 1965, the purchasers discovered that a warranty deed conveying the property to another person had already been filed and recorded. *Id.* The purchasers then demanded their money back from the guardian, but the guardian did not return the purchasers' money. *Id.* The surety argued

that any breach occurred prior to the time she filed a bond as guardian, and therefore it was not liable for the breach. *Id.* at 447. The court cited the general rule that the surety is not responsible for the acts of his principal occurring prior to the execution of the bond. *Id.* However, the court found that the guardian's retention of the purchasers' money after the purchasers made a demand for restitution was a breach of her obligation to faithfully administer the estate, and the surety was liable. *Id.*

It is important to note that in *Gilliam,* the court pointed out that when the guardian filed her first settlement on October 26, 1965, she still had on hand funds sufficient to make restitution to the purchasers. *Id.* This fact distinguishes *Gilliam* and *In re Keisker's Estate* from the present case because there is no evidence in this case that Jones was able to reimburse the estate during the time she was bonded by State Farm. In fact, there is substantial evidence that Jones was unable to reimburse the estate. Jones' answers to interrogatories indicated that she had no assets. In response to State Farm's request for admissions, King stated that he had "no evidence that Helen Jones could ever reimburse the estate." In addition, King's report to the probate court acknowledged that "it is obvious that [Jones] is without funds" to pay back the $29,500.

In support of its argument that it is not liable for any breach by Jones, State Farm cites *State ex rel. Jacobs v. Elliott,* 157 Mo. 609, 57 S.W. 1087 (1900). In *Jacobs,* a public administrator had been elected in 1880. *Jacobs,* 57 S.W. at 1087. He was bonded by one surety from 1880 to 1884, another from 1884 to 1888, and yet another from December 20, 1888 onward. *Id.* He was appointed to be curator of the estate of some minors on February 13, 1888. *Id.* Thereafter, he collected funds belonging to the minors' estate and deposited them in his own name. *Id.* at 1087–88. By December 20, 1888, he had withdrawn the entire amount belonging to the estate, and he had overdrawn the account. *Id.* at 1088. The curator died in 1897, and the new curator brought suit against the former curator's estate and his sureties on the third bond. *Id.* The new

curator contended that "even if the defalcation occurred before the giving of the bond sued on, charging himself in settlements, and bringing balances down from one annual settlement to another, made [the former curator's] securities under this last bond liable as well as the first." *Id.* at 1089. The court disagreed with this contention and cited the rule that sureties "are only liable for money or property that actually was or came into the hands of the curator during the terms covered by the bond on which they were sureties." *Id.* The court also found that "the mere statement by the curator in his settlements that the money or property was in his hands is not conclusive on the sureties that such was the fact." *Id.* The court held that because the breach occurred before the third bond was issued, the surety on the third bond was not liable for the conversion of the estate funds. *Id.* at 1090.

State Farm also cites *State ex rel. Short v. Hardy,* 200 Mo.App. 405, 206 S.W. 904 (1918). In *Short,* a public administrator was appointed to be the guardian of three minors. *Short,* 206 S.W. at 904. He continued to serve as guardian of the minors after his term ended on January 1, 1909. *Id.* On November 9, 1914, the probate court gave him permission to execute a new bond as guardian and discharged his bond as public administrator. *Id.* On November 26, 1917, the guardian filed a final settlement and resigned as guardian. *Id.* The final settlement showed a balance due to the estate. *Id.* The guardian failed to pay over to his successor the amount due the estate. *Id.* The new guardian brought suit against his predecessor and the predecessor's sureties. *Id.* The sureties argued that the guardian converted the funds before the execution of the bond sued on. *Id.*

In discussing the general rule that a surety is not responsible for the acts of the principal occurring prior to the execution of the bond, this court stated that the rule causes "no difficulty, even when the suit is against a set of sureties who became such after the conversion, if the principal was not, during the continuance of the second bond, able to return the fund theretofore converted." *Id.* at 906. The court reasoned that "[o]f course,

the sureties do not agree to stand good for a failure to discharge a duty that was impossible at and before the time the bond was executed." *Id.* at 907. However, the court questioned the application of the rule in a situation where the principal was solvent and able to replace the converted funds during the period of the second bond. *Id.* at 906. The court held that in such a situation, "by reason of the prior conversion and the subsequent solvency and ability of the principal to replace the fund, the loss results from both the prior and subsequent breach." *Id.* at 907. In that case, the court found, the estate should be able to look to both sets of sureties, requiring them to adjust their liabilities between themselves. *Id.*

In the case at bar, the breach that caused the damages, i.e., the spending of the estate funds by Jones, occurred before State Farm issued its bond. In addition, Jones has been unable to repay Patrick's estate during the bonded period. Because State Farm cannot be liable for a breach of a duty that was impossible for the principal to perform, the trial court did not err in granting summary judgment to State Farm.

The judgment of the trial court is affirmed.

All concur.